# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

HOMEWARD RESIDENTIAL, INC., solely in its capacity as Servicer for the Option One Mortgage Loan Trust 2006-3, for the benefit of the Trustee and the holders of Option One Mortgage Loan Trust 2006-3 Certificates,

|                Plaintiff,

v.

SAND CANYON CORPORATION, f/k/a Option One Mortgage Corporation,

|                Defendant.

Civil Action No. 1:12-cv-07319 (JFK)

ECF CASE

## SAND CANYON'S MEMORANDUM IN SUPPORT OF MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL

# TABLE OF CONTENTS

**Page**

Table of Authorities ...................................................................................................... iii

Introduction ..................................................................................................................... 1

Background ....................................................................................................................... 2

Legal Standards ............................................................................................................... 4

Argument .......................................................................................................................... 5

I.     The Order Involves a Question of Law That, If Resolved in Sand Canyon's Favor, Would Greatly Reduce the Scope of This Case. ................................. 5

II.    There Are Substantial Grounds for Difference of Opinion in Light of Conflicting New York Court of Appeals Precedent and Federal Law. ........................... 7

    A.    The Order's Application of Relation Back Conflicts with New York Substantive Law and Federal Law. ......................................................... 7

        1.    Because New York Law Provides to Sand Canyon a Substantive Right to Be Free of Contractual Liability After Six Years, the Order's Application of the Procedural Relation-Back Rule Violates the Rules Enabling Act. ........................................... 7

        2.    The Conflict Between *Nomura* and *ACE* Generates Substantial Grounds for Difference of Opinion. ........................... 12

        3.    Alternatively, the Order Misinterpreted *Nomura*'s Relation-Back Holding. ................................................................. 16

    B.    The Order Greenlights the Addition of Yet-to-Be-Identified Loans, in Violation of the Rules Enabling Act and in Conflict with *ACE* and with Other Decisions from This District. ................................... 17

III.   Immediate Appeal May Materially Advance the Termination of the Litigation Because the Order Allows Thousands of More Claims Than Have Been in This Case Since Its 2012 Commencement. ............................................... 19

Conclusion ...................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ACE Secs. Corp. v. DB Structured Prods., Inc.*,
   36 N.E.3d 623 (N.Y. 2015)................................................................8, 9, 11, 12, 16, 17, 18

*Atl. City Elec. Co. v. Gen. Elec. Co.*,
   207 F. Supp. 613 (S.D.N.Y. 1962) ...............................................................................13, 14

*Capital Records, LLC v. Vimeo, LLC*,
   972 F. Supp. 2d 537 (S.D.N.Y. 2013).................................................................................6

*Consub Del. LLC v. Schahin Enhenharia Limitada*,
   476 F. Supp. 2d 305 (S.D.N.Y. 2007)...........................................................5, 7, 13, 14, 17

*CTS Corp. v. Waldburger*,
   134 S. Ct. 2175 (2014) ..............................................................................................8, 9, 10

*Ely-Cruikshank Co. v. Bank of Montreal*,
   615 N.E.2d 985 (N.Y. 1993)................................................................................................9

*Fed. Hous. Fin. Agency v. UBS Ams., Inc.*,
   858 F. Supp. 2d 306 (S.D.N.Y. 2012).................................................................13, 14, 15, 20

*In re Hawker Beechcraft, Inc.*,
   No. 13 Misc. 373(PKC), 2013 WL 6673607 (S.D.N.Y. Dec. 18, 2013) ...............................19

*In re IndyMac Mortgage-Backed Sec. Litig.*,
   793 F. Supp. 2d 637 (S.D.N.Y. 2011).................................................................................10

*In re Lehman Bros. Sec. & ERISA Litig.*,
   800 F. Supp. 2d 477 (S.D.N.Y. 2011).................................................................................10

*In re Lloyd's Am. Trust Fund Litig.*,
   No. 96 CIV. 1262(RWS), 1997 WL 458739 (S.D.N.Y. Aug. 12, 1997)...........................6, 19

*John J. Kassner & Co. v. City of New York*,
   389 N.E.2d 99 (N.Y. 1979)............................................................................................8, 12

*Klinghoffer v. S.N.C. Achille Lauro*,
   921 F.2d 21 (2d Cir. 1990)...............................................................................................20

*Leasco Data Processing Equip. Corp. v. Maxwell*,
   468 F.2d 1326 (2d Cir. 1972).............................................................................................6

*MASTR Adjustable Rate Mortgs. Trust 2006-OA2 v. UBS Real Estate Sec. Inc.*,
    No. 12-cv-7322 (PKC), 2015 WL 797972 (S.D.N.Y. Feb. 25, 2015) ...................18, 19, 20, 21

*Moviecolor Ltd. v. Eastman Kodak Co.*,
    288 F.2d 80 (2d Cir. 1961) ...........................................................................................13, 14

*MRI Broadway Rental v. U.S. Mineral Prods. Co.*,
    704 N.E.2d 550 (N.Y. 1998) ..................................................................................................8

*Nomura Home Equity Loan, Inc. v. Nomura Credit & Capital, Inc.*,
    19 N.Y.S.3d 1 (App. Div., 1st Dep't 2015) ..............................4, 7, 8, 11, 12, 16, 17

*Police & Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*,
    721 F.3d 95 (2d Cir. 2013) .............................................................................................8, 10, 11

*Schmidt v. Merchants Despatch Transp. Co.*,
    200 N.E. 824 (N.Y. 1936) ....................................................................................................10

*Schoenefeld v. New York*,
    748 F.3d 464 (2d Cir. 2014) .................................................................................................15

*U.S. Bank, Nat'l Ass'n v. Citigroup Global Mkts. Realty Corp.*,
    No. 13-cv-6989 (GBD), 2015 WL 1222075 (S.D.N.Y. Mar. 13, 2015).................................19

*U.S. Bank, Nat'l Ass'n v. UBS Real Estate Sec. Inc.*,
    No. 12-cv-7322 (PKC) (JCF), 2016 WL 4690410 (S.D.N.Y. Sept. 6, 2016)...................18, 19

## STATUTES

12 U.S.C. § 4617(b)(12)(A) .......................................................................................................14

28 U.S.C. § 1292(b) ..................................................................1, 2, 4, 5, 6, 13, 14, 15, 19, 21

28 U.S.C. § 2072(b) ...........................................................................................................7, 10, 11

N.Y. C.P.L.R. 213(2) .........................................................................................................7, 8, 10

## OTHER AUTHORITIES

CHARLES A. WRIGHT ET AL., 16 FEDERAL PRACTICE AND PROCEDURE § 3930 (3d
    ed. 2012) ..........................................................................................................................5, 6, 13

2d Cir. Local R. 27.2 ..............................................................................................................15

Federal Rule of Civil Procedure 15(c) ...........................................................................7, 10, 18

Defendant Sand Canyon Corporation ("Sand Canyon") respectfully requests that the Court certify the September 30, 2016 Order (the "Order") for interlocutory appeal under 28 U.S.C. § 1292(b).

## INTRODUCTION

This lawsuit is one of many before the state and federal courts in New York in which a plaintiff (1) alleges that certain mortgage loans sold to a common-law securitization trust breach the seller's representations and warranties about the quality of the loans and (2) seeks to enforce the sole remedy provided for in the parties' agreement, which is to compel the seller to cure or repurchase the defective loans. However, unlike in most other lawsuits, the plaintiff here made a conscience decision to sue over a mere 96 loans out of more than 7,500 securitized in the particular trust—then four years later moved for leave to file a second amended complaint to add claims connected to thousands of more loans, some of which it identified, most of which it did not. In her September 30, 2016 Order, Judge Torres granted the motion. She then granted Sand Canyon's pre-motion request to file this motion to certify the Order for interlocutory appeal.

Interlocutory review is appropriate because the Order implicitly answered "no" to the following question of law:

> Does New York law prohibit the expansion of a breach-of-contract lawsuit seeking to enforce the repurchase remedy for allegedly defective mortgage loans when the plaintiff fails to provide within the six-year limitation period the contractually required pre-suit notice and demand to repurchase, regardless of whether the plaintiff also makes a bare allegation of pervasive breach?

By answering "no," the Order conflicts with binding decisional authority and federal law. Furthermore, if Judge Torres had held that New York's substantive law bars the claims that Homeward seeks to add to its lawsuit now, the scope of the case would have remained limited to fewer than 100 loans. As a result of the Order, thousands more potentially are in play.

1

Sand Canyon respectfully requests that the Court certify the Order for interlocutory appeal under 28 U.S.C. § 1292(b) so that the Second Circuit may consider the question. The question satisfies the standards for certification. It presents a controlling question of law, the answer to which is not dependent on further factual development. Moreover, New York case law provides substantial grounds for answering the question in Sand Canyon's favor. And answering the question in Sand Canyon's favor would materially advance the termination of this lawsuit by averting considerable and costly discovery and trial preparation (as well as the expenditure of substantial judicial resources).[1]

## BACKGROUND

Option One Mortgage Corporation (now named Sand Canyon) sold 7,583 mortgage loans, with an initial balance of about $1.5 billion, to the Trust from October through December 2006. Second Am. Compl. ¶ 1. The sale was documented in a Mortgage Loan Purchase Agreement ("MLPA") between Option One and Option One Mortgage Acceptance Corporation, as depositor, which in turn transferred the loans to the Trust via a Pooling and Servicing Agreement ("PSA"). *Id.* ¶¶ 17–18. The PSA named Wells Fargo Bank, N.A., as Trustee. *Id.* (A Separate Trustee, Law Debenture Trust Company, was later appointed.) Although Option One initially serviced the loans, in April 2008, Homeward purchased all of Option One's servicing assets—including mortgage servicing rights, loan files, and other related records and

---

[1] Sand Canyon has also moved to dismiss the second amended complaint that Homeward filed following the Order (ECF No. 139). The possibility that the Court grants that motion does not render the instant motion premature. That several paths lead to the same result does not mean that any of them should be abandoned. Indeed, the goals of § 1292(b) suggest that where the required factors are met, the earlier a legal question is resolved, the better, and the legal question here is one of concern in RMBS put-back cases. In any event, if the Court were to grant Sand Canyon's motion to dismiss in whole or in part, then it could dismiss the instant motion as moot or vastly limit its scope.

data systems—and began servicing the loans.  Decl. of Joyce Young in Opp'n to Mot. for Leave to File Second Am. Compl. Ex. B (ECF No. 106-2).

In 2012, the Federal Housing Finance Agency ("FHFA"), as conservator for the Federal Home Loan Mortgage Corporation ("Freddie Mac"), which is a certificateholder in the Trust, notified Wells Fargo that 119 loans in the Trust were in breach of representations and warranties in the MLPA and demanded that Wells Fargo enforce Sand Canyon's repurchase obligation under the PSA.  Ex. A at 6–7 (the "FHFA Letter").[2]  Wells Fargo forwarded the FHFA Letter to Sand Canyon on March 8, 2012, demanding cure or repurchase with respect to the 119 loans within 120 days.  *Id.* at 2–5.  Sand Canyon timely responded that the claims had no merit. Second Am. Compl. Ex. B. at 2–3 (ECF No. 126-92).  Homeward brought suit to enforce the cure-or-repurchase remedy on September 28, 2012.  The suit was limited to only 96 of the 119 loans identified in the FHFA Letter.  Compl. (ECF No. 1).

Judge Torres entered a scheduling order on July 22, 2014, which required Homeward to file any motions to amend the complaint by August 22, 2014.  Civil Case Management Plan and Scheduling Order ¶ 3 (ECF No. 65).  Nearly ten months after that deadline, on May 15, 2015, the Separate Trustee, Law Debenture Trust Company, received a letter on behalf of certain certificateholders represented by Perry, Johnson, Anderson, Miller & Moskowitz LLP.  Ex. B (the "Perry Johnson Letter").  The Perry Johnson Letter alleged breaches of representations and warranties as to 649 Trust loans.  *Id.*  For support, the Letter identified six schedules derived entirely from data prepared by the servicer and Trustee that was available well before Homeward

---

[2] Except where otherwise noted, citations to "Ex. __" refer to the corresponding exhibits to the Declaration of Vernon Cassin in Support of Sand Canyon's Notice of Motion to Certify Order for Interlocutory Appeal, filed herewith.

filed this lawsuit in March 2012.  Otero Decl. in Supp. of Mot. for Leave Ex. C (ECF Nos. 104-104 to -106).

After receiving the Perry Johnson Letter, Homeward sent Sand Canyon a letter stating its intent to file a second amended complaint to include claims for the 649 newly identified loans. Letter Motion for Conference from Otero to Magistrate Judge Cott at 1–2 (ECF No. 93).  On November 25, 2015, Homeward moved for leave to file its second amended complaint (ECF No. 102).  The proposed amended complaint purported to add not only the claims as to the 649 loans referenced in Homeward's pre-motion letter, but also claims as to any defective, not-yet-identified loan under the theory that Sand Canyon had systematically breached its origination guidelines and, therefore, constructively discovered the breaches.

Judge Torres granted Homeward's motion on September 30, 2016.  Relying on *Nomura Home Equity Loan, Inc. v. Nomura Credit & Capital, Inc.*, 19 N.Y.S.3d 1 (App. Div., 1st Dep't 2015), she held that the proposed new claims relate back to the date of the original complaint because those claims arose from the same transaction as the originally pleaded claims; the pre-suit FHFA Letter informed Sand Canyon that additional loans were likely being investigated; and Homeward's original and first amended complaint included allegations suggesting that Sand Canyon had constructive knowledge of its alleged breaches.  Order at 10–12 (ECF No. 124). She also held that allegations of Sand Canyon's widespread and systemic disregard of its underwriting guidelines were sufficient, at the pleading stage, to permit Homeward to add claims for all breaching loans, even though Homeward had never made a timely demand for repurchase of those loans.  *Id.* at 12–13.

## LEGAL STANDARDS

District courts have discretion to certify for interlocutory appeal an order granting a motion to amend a complaint.  *See* 28 U.S.C. § 1292(b).  Certification is appropriate if the order

"involves a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Id.* The criteria for certification "should be viewed together as the statutory language equivalent of a direction to consider the probable gains and losses of immediate appeal." CHARLES A. WRIGHT ET AL., 16 FEDERAL PRACTICE AND PROCEDURE § 3930, at 488 (3d ed. 2012). The question presented satisfies that standard.

## ARGUMENT

**I.    The Order Involves a Question of Law That, If Resolved in Sand Canyon's Favor, Would Greatly Reduce the Scope of This Case.**

Interlocutory review of a non-final order under § 1292(b) is proper if the order involves a "controlling question of law," the determination of which does not necessitate further factual development. 28 U.S.C. § 1292(b). Courts in the Second Circuit look for a "pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Consub Del. LLC v. Schahin Enhenharia Limitada*, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007), *aff'd*, 543 F.3d 104 (2d Cir. 2008), *abrogated on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009). Such a question is controlling if it "would materially affect the litigation's outcome." *Id.*

The question presented here is:

> Does New York law prohibit the expansion of a breach-of-contract lawsuit seeking to enforce the repurchase remedy for allegedly defective mortgage loans when the plaintiff fails to provide within the six-year limitation period the contractually required pre-suit notice and demand to repurchase, regardless of whether the plaintiff also makes a bare allegation of pervasive breach?

This question requires interpretation of New York's statute of limitations for breach-of-contract claims and is thus a question of law. It is "controlling" because a "yes" answer would "materially affect the litigation's outcome"—Homeward's attempt to add both the recently

identified 649 loans and its constructive-discovery theory would have to be rejected, and the case would be limited to fewer than 100 loans.

In its pre-motion opposition letter, Homeward suggested that an appellate court would have to review the record to resolve the question, which is therefore not a pure question of law. *See* Letter Addressed to Hon. Analisa Torres from Brian V. Otero at 2 (Oct. 28, 2016) (ECF No. 134). The suggestion is a makeweight. Although an appellate court must not get mired in facts or resolve a factual dispute, some limited engagement with or reference to the record is typically required and does not make interlocutory review inappropriate. *See* WRIGHT ET AL., 16 FED. PRAC. & PROC. § 3930, at 501 ("[O]rdinarily it seems better to keep courts of appeals aloof from interlocutory *embroilment* with the factual content of the record." (emphasis added)). The "review of the record" required to address the question presented here is a far cry from "embroilment" with the record, would not require the appellate court to resolve issues of fact, and is far less fact dependent than other cases that courts in this circuit have certified for interlocutory appeal. *See, e.g.*, *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1330 (2d Cir. 1972) (granting leave to appeal issues of subject-matter and personal jurisdiction), *abrogated on other grounds by Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010); *Capital Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 553 (S.D.N.Y. 2013) ("That the 'red flag' knowledge inquiry depends in part on the contents of each video does not mean the question is inappropriate for certification."); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 CIV. 1262(RWS), 1997 WL 458739, at *5 (S.D.N.Y. Aug. 12, 1997) ("Orders involving enforcement of a forum selection clause have been held to present controlling questions of law that are the proper subject of certification for appeal pursuant to Section 1292(b).").

## II.   There Are Substantial Grounds for Difference of Opinion in Light of Conflicting New York Court of Appeals Precedent and Federal Law.

The substantial-ground-for-difference-of-opinion prong is "met when (1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *Consub Del. LLC*, 476 F. Supp. 2d at 309.  The question presented satisfies this prong because the Order conflicts with New York substantive law, federal law, and the decisions of other judges in this district.

### A.   The Order's Application of Relation Back Conflicts with New York Substantive Law and Federal Law.

#### 1.   Because New York Law Provides to Sand Canyon a Substantive Right to Be Free of Contractual Liability After Six Years, the Order's Application of the Procedural Relation-Back Rule Violates the Rules Enabling Act.

Relying on *Nomura Home Equity Loan, Inc. v. Nomura Credit & Capital, Inc.*, 19 N.Y.S.3d 1 (App. Div., 1st Dep't 2015), and Rule 15(c) of the Federal Rules of Civil Procedure, the Order concluded that Homeward may add otherwise untimely claims to the case because the claims "relate back to timely claims."  Order at 12.  But under the Rules Enabling Act, 28 U.S.C. § 2072, procedural rules, including Rule 15(c), may not be applied to alter a party's substantive rights.  Here, Sand Canyon has a substantive right to be free of contractual liability (if any) six years after it gave the representations and warranties.  *See* N.Y. C.P.L.R. 213(2).  By applying relation back to allow Homeward to add new, indisputably untimely claims to the case, the Order altered the parties' substantive rights, thereby violating the Rules Enabling Act and thwarting the objectives of finality, certainty, and predictability that the New York Court of Appeals has venerated as a matter of substantive contract law.

A substantial ground for difference of opinion exists over whether C.P.L.R. 213(2) creates a substantive or merely procedural right, and whether a court may apply relation back (as

7

the Order did here and the Appellate Division did in *Nomura*) to add otherwise untimely claims. For the reasons set forth below, that difference should be resolved in favor of Sand Canyon.

C.P.L.R. 213(2), New York's statute of limitations for breach-of-contract claims, is a statute of repose—it runs, without interruption, from a date certain, and after it expires, plaintiff no longer has a cause of action for breach. *See Police & Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 106 (2d Cir. 2013) (distinguishing between statutes of limitations and statutes of repose); *see also CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2187 (2014). Decisions from the New York Court of Appeals confirm this.

In *ACE Securities Corp. v. DB Structured Products, Inc.*, 36 N.E.3d 623 (N.Y. 2015), an RMBS put-back case decided last year, the court held that the plaintiff's breach-of-contract claim arose on the transaction's closing date, which was the date on which the defendant gave the representations and warranties, *see id.* at 627–30, and that the full running of the cure-or-repurchase period was a condition precedent to bringing suit, *see id.* at 630–31. The court rejected the plaintiff's argument that the plaintiff's breach claim accrued upon the defendant's refusal to cure or repurchase the defective loans because such indeterminate and flexible timing ran against the grain of New York law:

> Our statutes of limitation serve the same objectives of finality, certainty and predictability that New York's contract law endorses. Statutes of limitation not only save litigants from defending stale claims, but also "express[] a societal interest or public policy of giving *repose* to human affairs." And we have repeatedly "rejected accrual dates which cannot be ascertained with any degree of certainty, in favor of a bright line approach."

*Id.* at 627–28 (alteration in original) (emphasis added) (citations omitted) (quoting *John J. Kassner & Co. v. City of New York*, 389 N.E.2d 99, 103 (N.Y. 1979); *MRI Broadway Rental v. U.S. Mineral Prods. Co.*, 704 N.E.2d 550, 553 (N.Y. 1998)).

The court also analogized the plaintiff's attempt to start the clock running when a plaintiff chooses to demand cure or repurchase to the "discovery rule," under which statutes of limitations begin to run when a plaintiff discovers or reasonably should have discovered the harm. "New York does not apply the 'discovery' rule to statutes of limitations in contract actions," the court explained, because doing so would not set a fixed date for the running of the limitation period and, therefore, would not promote the objectives of finality, certainty, and predictability that New York law seeks to promote in contract cases. 36 N.E.3d at 628; *cf. CTS Corp.*, 134 S. Ct. at 2187 (holding that the discovery rule in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 does not preempt state statutes of repose). Accordingly, under New York law, breach-of-contract claims "run from the time when liability for wrong has arisen even though the injured party may be ignorant of the existence of the wrong or injury." 36 N.E.3d at 628 (citation omitted) (quoting *Ely-Cruikshank Co. v. Bank of Montreal*, 615 N.E.2d 985, 987 (N.Y. 1993)). So fundamental is this rule to New York law that it even trumps equitable considerations:

> This is so even though the result may at times be "harsh and manifestly unfair, and creates an obvious injustice" because a contrary rule "would be entirely dependent on the subjective equitable variations of different Judges and courts instead of the objective, reliable, predictable and relatively definitive rules that have long governed this aspect of commercial *repose*."

*Id.* (emphasis added) (quoting *Ely-Cruikshank*, 615 N.E.2d at 987–88).

The court in *Ely-Cruikshank* did not mince words as to the source of that principle: "We have noted that Statutes of Limitation are statutes of *repose* representing a *legislative* judgment that . . . occasional hardship . . . is outweighed by the advantage of barring stale claims." 615 N.E.2d at 988 (alterations in original) (first emphasis added). In a case the New York Court of Appeals relied on in *Ely-Cruikshank*, it likewise reasoned that the discovery rule did not apply to a negligence cause of action precisely *because* the limitation period was a statute of repose:

9

> The Statute of Limitations is a statute of repose. At times, it may bar the assertion of a just claim. Then its application causes hardship. The Legislature has found that such occasional hardship is outweighed by the advantage of outlawing stale claims. The problem created by the slow onset of the disease of pneumoconiosis or silicosis has been considered by the courts of other jurisdictions. They have given to statutes of limitation their intended effect as statutes of repose and have held that a cause of action sounding in negligence accrues at the time when through lack of care by an employer, deleterious substances enter the lungs of an employee though the development of consequential damages may be long delayed.

*Schmidt v. Merchants Despatch Transp. Co.*, 200 N.E. 824, 827–28 (N.Y. 1936), *superseded by statute*, N.Y. C.P.L.R. 214-c (1986).

That New York law requires contract claims to run from a fixed point in time and rejects application of a discovery rule is strong evidence that C.P.L.R. 213(2) is a statute of repose, and therein lies the Order's fault. Statutes of repose create "a *substantive* right in those protected to be free from liability." *IndyMac*, 721 F.3d at 106.[3] As such, the Order's application of Rule 15(c) to permit untimely claims to relate back to timely claims runs head-on into the Rules Enabling Act: "Rule 15 may not be construed to permit relation back [to avoid a statute of repose] because such a construction would conflict with the Rules Enabling Act, which provides in pertinent part that the rules prescribed by the Supreme Court (including Rule 15) 'shall not abridge, enlarge or modify any substantive right.'" *In re IndyMac Mortgage-Backed Sec. Litig.*, 793 F. Supp. 2d 637, 643 (S.D.N.Y. 2011) (quoting 28 U.S.C. § 2072(b)), *aff'd in relevant part sub nom. Police & Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013). Indeed, courts long have applied the Rules Enabling Act to deny Rule 15(c) relation-back motions that seek to add claims otherwise barred by statutes of repose. *See In re Lehman Bros.*

---

[3] To be clear, the *label* is not what matters here. Whether it is called a "statute of limitations" or "statute of repose"—legal terms the Supreme Court has recognized have not been used with precision, *see CTS Corp.*, 134 S. Ct. at 2186—a plaintiff has no breach-of-contract action after the six years specified in C.P.L.R. 213(2) have run.

*Sec. & ERISA Litig.*, 800 F. Supp. 2d 477, 483 & n.27 (S.D.N.Y. 2011) (collecting cases). The same result is required here. *See IndyMac*, 721 F.3d at 109 ("The use of the term 'shall' in [28 U.S.C. § 2072(b)'s] language indicates its mandatory nature; federal courts are bound by its dictates.").

*Nomura*, on which the Order relied to approve adding new, untimely claims to this case, is neither sound nor controlling law on this issue because the First Department addressed relation back without reference to principles of New York contract law as discussed by the New York Court of Appeals in *ACE*. Indeed, *ACE*'s reasoning, though not specifically addressed to relation-back principles, is sufficiently rigorous as to eliminate the use of relation back to bring an otherwise untimely contract claim. In *ACE*, the defendants received a letter demanding repurchase of all 8,815 loans in the subject trust, but the 90-day repurchase period would not expire until fourteen days after the limitation period had expired. *See* 36 N.E.3d at 625–26. The New York Court of Appeals affirmed dismissal of the lawsuit, brought on the last day of the limitation period, *id.* at 627, and held that the full running of the cure-or-repurchase period is a condition precedent to bringing suit, *id.* at 630–31. Thus, regardless of whether the defendant was clearly "on notice" of the allegations before the statute of limitations had run, there could be no claim as to any of the 8,815 loans.

The rule in *Nomura*, if applied to the facts in *ACE*, would undermine the New York Court of Appeals' black-letter ruling. Under *Nomura*'s relation-back holding, if the plaintiff in *ACE* had demanded repurchase of just *one* of those loans two weeks earlier—90 days, rather than 76 days, before the statute of limitations had run—an untimely claim as to *all remaining 8,814 loans* could have related back and thus been permitted. It is, at the least, highly unlikely that the New York Court of Appeals would disallow every one of thousands of claims but potentially

11

allow *all* claims if a demand for cure or repurchase of even *one loan* left just enough time for the cure-or-repurchase period to expire before the limitation period.   The principles of finality, certainty, and predictability that mattered so much to the New York Court of Appeals in *ACE* should not be so readily circumvented by the invocation of the idea of "notice."

By contrast, under the rule Sand Canyon proposes, courts can objectively evaluate a repurchase claim's timeliness by reference to the deal closing date and the date on which the lawsuit is commenced.   This rule has much to commend it in addition to its being consistent with New York law.   Here, as in *ACE*, when the six-year period to fulfill that condition precedent expired, there arose "a societal interest of public policy of giving repose to human affairs."   *Id.* at 627–28 (quoting *Kassner*, 389 N.E.2d at 103).   This interest extends to courts as well by preventing the late addition of claims that, as here, may increase the scope of the case more than fifty-fold, with the consequent drain on judicial and party resources.   In short, a bright-line rule aligned with the holding in *ACE*—only claims as to loans for which the plaintiff makes a demand for cure or repurchase that expires unfulfilled within six years will be permitted regardless of relation back—would prevent the kind of mischief that could happen when, for example, 96 of more than 7,500 loans are noticed timely, and then hundreds or even thousands more are noticed years later.   *Cf. id.* at 630 (rejecting plaintiff's argument which the court characterized as "argu[ing], in effect, that the cure or repurchase obligation transformed a standard breach of contract remedy, i.e. damages, into one that lasted for the life of the investment—decades past the statutory period").

### 2.   The Conflict Between *Nomura* and *ACE* Generates Substantial Grounds for Difference of Opinion.

A substantial ground for difference of opinion exists even if the Court were to conclude that *Nomura* does not directly conflict with *ACE* because *no* conflict is required where, as here,

"the issue is particularly difficult and of first impression for the Second Circuit." *Consub Del. LLC*, 476 F. Supp. 2d at 309. In any event, directly conflicting holdings are not a necessary condition for certifying an order. *See id.* at 313. Rather, a court should consider "the strength of the arguments in opposition to the challenged ruling." *Id.* at 310.

The Court also should consider the type of issue presented and the strength of the other § 1292(b) prongs. "If proceedings that threaten to endure for several years depend on an initial question of jurisdiction, *limitations*, or the like, certification may be justified at a relatively low threshold of doubt." WRIGHT ET AL., 16 FED. PRAC. & PROC. § 3930, at 495 (emphasis added). Following that principle, other judges in this district have certified orders presenting far weaker grounds for difference of opinion than those here. *See, e.g.*, *Fed. Hous. Fin. Agency v. UBS Ams., Inc.* ("*FHFA*"), 858 F. Supp. 2d 306 (S.D.N.Y. 2012) (Cote, J.); *Atl. City Elec. Co. v. Gen. Elec. Co.*, 207 F. Supp. 613 (S.D.N.Y. 1962). *FHFA* and *Atlantic City*, both of which presented issues involving limitation periods, but neither of which featured a strict split of authority, are instructive.

In *Atlantic City*, a case involving Clayton Act claims, the district court denied the defendants' motion to strike time-barred allegations from the complaint because, it held, the defendants' fraudulent concealment tolled the Act's four-year limitation period. *See Atl. City*, 207 F. Supp. at 617–18 (applying the rule set forth in *Moviecolor Ltd. v. Eastman Kodak Co.*, 288 F.2d 80 (2d Cir. 1961)). The defendants had argued that the rule in *Moviecolor* was dictum and applied to only state limitation periods. *Id.* at 617. The district court disagreed. It concluded that the Second Circuit's application of fraudulent concealment "was an essential element in the process of decision," and that even if it were dictum, "its controlling effect [wa]s

13

undiminished" because the Second Circuit "made clear that it would consider broader issues and why it was doing so." *Id.* at 618.

Despite those conclusions, the court focused on the practical effects of vastly expanding the scope of the case and, therefore, certified its order for interlocutory appeal under § 1292(b):

> [T]he practical problem here is whether a four year cutoff period will be applied to claims which might otherwise, in some cases, go back to the 1940's. Determination of this question affects the scope of discovery procedure, the length and complexity of ultimate trial, and the expenditure of time, money and effort which these cases will engender. These are strong reasons for having the issue of construction of Section 4B conclusively determined and determined expeditiously. *Therefore, in determining whether there is "substantial ground for difference of opinion" as to the conclusive effect of* Moviecolor*, a narrow approach is not justified.* While I believe *Moviecolor* decided the issue of construction of [the statutory time period], I also feel that there is "substantial ground for difference of opinion" as to whether it did.

*Id.* at 620 (emphasis added). By not specifying what constituted substantial grounds, the court indicated that, in light of the strong evidence of a controlling question of law the resolution of which may materially advance the ultimate termination of the litigation, the very arguments the court rejected *were themselves* sufficient.[4] Thus, when immediate appeal may generate large benefits and there are strong grounds for difference of opinion, certification is warranted. The grounds for a difference of opinion are stronger here than in *Atlantic City*.

*FHFA* presented a similar issue for certification. The defendants argued that in denying their motion to dismiss certain claims as untimely, the district court had "erred in concluding that [the Housing and Economic Recovery Act of 2008 ('HERA')] displaces the statute of repose that generally governs claims under the Securities Act." 858 F. Supp. 2d at 337. Though HERA applies to "statute[s] of limitations," 12 U.S.C. § 4617(b)(12)(A), the court concluded with "*little*

---

[4] The touchstone for satisfying the substantial-ground prong is not, of course, mere disagreement, but the *quality* of the disagreement—that is, "the strength of the arguments in opposition to the challenged ruling." *Consub Del. LLC*, 476 F. Supp. 2d at 310.

*doubt*" that the term as used in HERA embraces statutes of repose as well. *FHFA*, 858 F. Supp. 2d at 339 (emphasis added). Relying on the regular use of the word "limitations" to encompass both statutes of limitations and statutes of repose, the court rejected the argument that Congress's passage—twenty years earlier—of a single statute tolling "any . . . period of limitation or repose" and subsequent consideration of bills using the word "repose" generated substantial grounds for difference of opinion regarding HERA. *Id.* The court also rejected the argument that because two out-of-circuit district court decisions concerning a different statute concluded that the terms "statute of limitations" and "statute of repose" are unambiguously mutually exclusive, HERA's use of the word "limitations" excluded statutes of repose from its breadth. *Id.* at 340.

> Still, the court certified the order for interlocutory appeal:

> Nonetheless, it must be acknowledged that the existence of these two decisions suggests that there may be grounds, however weak, for a difference of opinion on this question. *In light of the compelling arguments for certification on the other two prongs of the Section 1292(b) analysis*, the tension between the May 4 Opinion and the two decisions cited by the defendants is sufficient to justify certification.

*Id.* (emphasis added).

Certification in *FHFA* and *Atlantic City* warrants certification here, *a fortiori*. Sand Canyon is not relying on non-binding cases with few factual similarities to this case. Rather, it has shown that decades of New York case law on contract claims provide substantial grounds for disagreeing with the Order. The Second Circuit should therefore be given the immediate opportunity to interpret the case law in the context of relation back of untimely claims, or if necessary to certify the question presented to the New York Court of Appeals. *See* 2d Cir. Local R. 27.2; *Schoenefeld v. New York*, 748 F.3d 464, 470 (2d Cir. 2014).

### 3.    Alternatively, the Order Misinterpreted *Nomura*'s Relation-Back Holding.

Substantial grounds for difference of opinion would exist even if *Nomura* were correctly decided because the Order stretched the relation-back principle beyond what *ACE* permits.  In *Nomura*, the plaintiffs made pre-suit demands for repurchase of all loans and filed timely claims as to thousands of loans, noting that thousands more could not be reviewed and that the defendant was aware of the defects.  *See* 19 N.Y.S.3d at 3–4.  The plaintiffs also sent the defendant pre-suit letters stating that certificateholders actually "*were* investigating" the mortgage loans and "*would*" make claims on "additional defective loans" uncovered by the investigation.  *Id.* at 6 (emphases added).  Indeed, the plaintiffs provided additional breach notices soon after bringing suit.  *Id.* at 3.  Applying relation back, the court affirmed the "refus[al] to dismiss claims relating to loans that plaintiffs failed to mention in their breach notices or that were mentioned in breach notices sent less than 90 days before plaintiffs commenced their actions."  *Id.* at 6.  Thus, the court allowed the specific identification of loans to relate back to the timely general claims that were included in the timely lawsuits.

That ruling is wrong under *ACE* because the contracts required specific, not general, claims.  But even if *Nomura* were correct, it would not help Homeward because the Order went beyond what the court did in *Nomura*.  Here, the only pre-suit communications, including the complaint itself, were limited to the 119 loans identified in the FHFA Letter.  Homeward made no general pre-suit demand for cure or repurchase of all loans, and the FHFA Letter referenced no on-going investigation—it merely reserved rights to identify other breaches, a boilerplate turn of phrase in notice letters.  *See* Ex. A at 7 ("FHFA and Freddie Mac reserve their rights to identify additional breaches of representations and warranties respecting the Subject Loans, and

to identify other Mortgage Loans with respect to which the Originator may have breached one or more of the representations and warranties contained in the MLPA.").

Drawing a flawed comparison to *Nomura*, the Order concluded that there was sufficient notice to permit relation back because the FHFA Letter "informed Defendant that additional loans were *likely* being investigated."  Order at 11 (emphasis added).  Whether relation back stretches so far as to give identical legal effect to plainly different text without offending the objectives of finality, certainty, and predictability that inhere in substantive New York law is a question of first impression and, therefore, appropriate for certification.  *See Consub Del. LLC*, 476 F. Supp. 2d at 309.

### B.   The Order Greenlights the Addition of Yet-to-Be-Identified Loans, in Violation of the Rules Enabling Act and in Conflict with *ACE* and with Other Decisions from This District.

Timeliness aside, the Order violates the Rules Enabling Act because it vitiates Sand Canyon's substantive right to receive pre-suit notice of alleged breaches on a loan-by-loan basis and a demand to cure or repurchase each allegedly defective loan.  Sand Canyon bargained for that right in the Mortgage Loan Purchase Agreement ("MLPA"), which provides:

> Within 120 days of the earlier of either discovery by or notice to the Originator of any breach of a representation or warranty that materially and adversely affects the value of a Mortgage Loan or the Mortgage Loans or the interest therein of the Purchaser, the Originator shall use its best efforts promptly to cure such breach in all material respects and, if such breach cannot be cured, the Originator shall, at the Purchaser's option, repurchase such Mortgage Loan at the Purchase Price.

Ex. D at 5 (MLPA § 3.04); *see also* Ex. E at 8–9 (PSA § 2.03(a)) (providing that the Trustee shall enforce the repurchase remedy only after the 120-day cure-or-repurchase period runs).  By holding that otherwise untimely claims for an unknown number of loans that were never the subject of pre-suit notice or demand related back to timely claims, *see* Order at 12–13, Judge

Torres impermissibly applied a procedural rule (Rule 15(c)) to abridge a substantive right (pre-suit notice and demand for cure or repurchase on a loan-by-loan basis).[5]

Sand Canyon's alleged constructive discovery of the breaches, *see* Order at 11 (permitting claims for the unidentified loans based on "allegations *suggesting* Defendant's systemic disregard for its underwriting guidelines, and its knowledge at the time of the securitization that loans it was securitizing breached its representations and warranties" (emphasis added)), is not a permissible alternative to loan-by-loan notice and demand for cure or repurchase.  On this point, the Order is inconsistent not only with the loan-by-loan language in the governing contracts, but also with *ACE*.  A purchaser of loans, like a purchaser of goods, almost always can sufficiently allege that the originator or manufacturer has constructive knowledge of actually non-conforming goods or paper before the limitation period expires.  *ACE* would thus be essentially meaningless if allegations of constructive knowledge could be so readily used to evade limitation periods.

Other decisions from this district already have concluded that when the governing contracts include materially identical loan-by-loan language, the mere suggestion of a pervasive breach does *not* trigger defendants' obligation to cure or repurchase.  *See, e.g.*, *MASTR Adjustable Rate Mortgs. Trust 2006-OA2 v. UBS Real Estate Sec. Inc.*, No. 12-cv-7322 (PKC), 2015 WL 797972, at *4 (S.D.N.Y. Feb. 25, 2015) (rejecting a discovery-by-pervasive-breach theory because "[t]he parties could have, but did not, bargain for an inquiry notice standard" or "an obligation that if the aggregate number of loans in breach exceeded a certain threshold, a duty to reexamine all loans would be triggered"); *id. sub nom. U.S. Bank, Nat'l Ass'n v. UBS*

---

[5] Indisputably, Homeward has not identified or provided notice of any loan or defect—let alone demanded repurchase of any loan—beyond the 119 identified in the FHFA Letter and the 649 identified in the Perry Johnson Letter.

*Real Estate Sec. Inc.*, No. 12-cv-7322 (PKC) (JCF), 2016 WL 4690410, at *27 (S.D.N.Y. Sept. 6, 2016) (confirming the court's earlier rejection of a constructive-knowledge theory because the defendant's remedial obligations "apply to breaches on an individualized loan-by-loan basis"); *U.S. Bank, Nat'l Ass'n v. Citigroup Global Mkts. Realty Corp.*, No. 13-cv-6989 (GBD), 2015 WL 1222075, at *3 (S.D.N.Y. Mar. 13, 2015) (Daniels, J.) ("Plaintiff cannot save this claim by arguing that Citigroup was generally aware of 'pervasive breaches' . . . because the Agreements contain a loan-specific cure or repurchase remedy.").[6]

This case justifies application of the same rationale that judges in this district have already applied. And at any rate, this intra-district divergence should be reconciled via certification of an interlocutory appeal.

### III. Immediate Appeal May Materially Advance the Termination of the Litigation Because the Order Allows Thousands of More Claims Than Have Been in This Case Since Its 2012 Commencement.

"[I]mmediate appeal is considered to materially advance the termination of the litigation if appeal promises to advance the time for trial or to shorten the time required for trial." *In re Hawker Beechcraft, Inc.*, No. 13 Misc. 373(PKC), 2013 WL 6673607, at *5 (S.D.N.Y. Dec. 18, 2013). "The institutional efficiency of the federal court system is among the chief concerns underlying § 1292(b). Because the district court's efficiency concerns are greatest in large, complex cases, certification may be more freely granted in so-called 'big' cases." *In re Lloyd's*

---

[6] Homeward might try to argue in opposition that its allegations were more than a "mere suggestion" of pervasive breach. But in *MASTR*, the evidence in support of pervasive breach was equal to or even stronger than that alleged here, and still, Judge Castel rejected plaintiffs' pervasive-breach theory. *See* 2015 WL 797972, at *3 (actual notice of breach as to *4,462 loans*); *id. sub nom. U.S. Bank, Nat'l Ass'n*, 2016 WL 4690410, at *27 (plaintiffs asserted that the defendant should have known about widespread breaches based on higher-than-average levels of risk identified in samples, vendor reports of breaches, and the defendant's review of the vendor reports). Regardless, a conflict persists between the Order and other decisions rejecting the pervasive-breach or constructive-knowledge theory.

*Am. Trust Fund Litig.*, No. 96-cv-1262(RWS), 1997 WL 458739, at *4 (S.D.N.Y. Aug. 12, 1997) (citations omitted). Certifying the Order for appeal would achieve these benefits. If Sand Canyon's proposed answer to the controlling question of law presented here is correct, then this case would once again concern fewer than 100 loans, whereas now Homeward may pursue repurchase of thousands of loans, potentially greatly multiplying the time and expense of the proceedings needed to resolve this case. Thus, interlocutory appeal may materially advance the termination of the litigation and thereby promote judicial economy as well as the conservation of the parties' resources in resolving this litigation.[7]

A ruling in Sand Canyon's favor would also promote finality in both active and future RMBS put-back cases in this circuit. *See Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) (stating that courts "may properly consider the system-wide costs and benefits of allowing the appeal," including "the impact that an appeal will have on other cases").[8] Case in point, the defendant in *MASTR* considered seeking leave to ask "whether pre-suit notice is a condition precedent under the PSAs, and whether that condition precedent can be satisfied through an expert report served years after the action is commenced." Letter Addressed to Hon. P. Kevin Castel from Scott D. Musoff at 2, *MASTR*, No. 12-cv-7322 (S.D.N.Y. Sept. 27, 2016),

---

[7] That the interlocutory appeal would not terminate *all* claims does not undermine this conclusion. *See Fed. Hous. Fin. Agency v. UBS Ams., Inc.*, 858 F. Supp. 2d 306, 336–38 (S.D.N.Y. 2012) (rejecting plaintiff's argument that certification was improper because contractual tolling agreements applied to 8 of 22 mortgage-backed certificates and thus interlocutory appeal, even if resolved in defendants' favor, would not terminate the litigation, and noting that appellate resolution in defendants' favor "would significantly narrow the scope of discovery in this case and the proof that the parties would be able to present at trial, saving the parties and the public time and money").

[8] System-wide costs and benefits is a plus factor that makes certification even more justifiable— but it is not required. The Second Circuit has held that it cannot be a *requirement* for certification that a question of law "affect a wide range of pending cases." *Klinghoffer*, 921 F.2d at 24.

ECF No. 513.[9]   That examples of active cases in which plaintiffs rely on relation back to shoehorn untimely claims into the litigation years after the commencement of suit may not be legion does not undermine the importance of the question presented here.   To the contrary, the indefiniteness inherent in Homeward's position underscores the question's importance.   If relation back is permitted under these circumstances, any current or future RMBS case may grow exponentially at any time, thus taxing the resources of courts and litigants alike.   Given the opportunity, the New York Court of Appeals would not countenance such a result.

## CONCLUSION

An interlocutory appeal of the Order is appropriate under 28 U.S.C. § 1292(b) because it would materially advance the conclusion of this litigation and would save the resources of the Court and the parties.   Accordingly, Sand Canyon respectfully requests that the Court amend the September 30, 2016 Order on Homeward's motion to file a second amended complaint to include a certification of that Order for interlocutory appeal to the Second Circuit.

---

[9] Unlike in *MASTR*, where trial had already occurred, an interlocutory appeal here would come far before trial and could prevent the expenditure of substantial judicial (and party) resources by significantly reducing the scope of all further proceedings, including but not limited to trial.   *See, e.g.*, Order at 13 (noting that the fact discovery deadline was recently extended).

Dated:  November 30, 2016
New York, New York

BAKER BOTTS L.L.P.

/s/ Michael L. Calhoon
Michael L. Calhoon (admitted *pro hac vice*)
Richard P. Sobiecki (admitted *pro hac vice*)
Vernon Cassin
Baker Botts L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 639-7700
Facsimile: (202) 639-7890
michael.calhoon@bakerbotts.com
rich.sobiecki@bakerbotts.com
vernon.cassin@bakerbotts.com

Douglas W. Henkin
Baker Botts L.L.P.
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 408-2500
Facsimile: (212) 408-2501
douglas.henkin@bakerbotts.com

***Counsel for Defendant Sand Canyon Corporation***

MURPHY & McGONIGLE, P.C.

James K. Goldfarb
jgoldfarb@mmlawus.com
1185 Avenue of the Americas, Floor 21
New York, New York 10036
(212) 880-3999

Daniel T. Brown (admitted *pro hac vice*)
dbrown@mmlawus.com
555 13th Street, N.W., Suite 410W
Washington, D.C. 20004
(202) 661-7000

***Co-Counsel for Defendant Sand Canyon Corporation***

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of November, 2016, a copy of the foregoing

MEMORANDUM   IN   SUPPORT   OF   MOTION   TO   CERTIFY   ORDER   FOR

INTERLOCUTORY APPEAL was sent by electronic mail to the following attorneys of record

for Homeward Residential, Inc.:

Patrick L. Robson
probson@hunton.com

Brian V. Otero
botero@hunton.com

Michael Bert Kruse
mkruse@hunton.com

Stephen Roy Blacklocks
sblacklocks@hunton.com

/s/ Michael L. Calhoon
Michael L. Calhoon

23