**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------ X
HOMEWARD RESIDENTIAL, INC., :
solely in its capacity as :
Servicer for the Option One :
Mortgage Loan Trust 2006-3, :
for the benefit of the Trustee :
and the holders of Option One :
Mortgage Loan Trust 2006-3 :
Certificates, :                 No. 12 Civ. 7319 (JFK)
                Plaintiff, :    **OPINION & ORDER**
                                :
     -against-                  :
                                :
SAND CANYON CORPORATION, f/k/a  :
Option One Mortgage             :
Corporation,                    :
                Defendant.      :
------------------------------ X

<u>APPEARANCES</u>

FOR PLAINTIFF HOMEWARD RESIDENTIAL, INC.:
     Brian V. Otero
     Stephen R. Blacklocks
     Michael B. Kruse
     HUNTON & WILLIAMS LLP

FOR DEFENDANT SAND CANYON CORPORATION:
     Michael L. Calhoon
     Richard P. Sobiecki
     Vernon Cassin
     Douglas Henkin
     BAKER BOTTS L.L.P.
     James Goldfarb
     Daniel T. Brown
     MURPHY & McGONIGLE, P.C.

**JOHN F. KEENAN, United States District Judge:**

Before the Court are Defendant Sand Canyon Corporation's

("Defendant") motions (1) for reconsideration of the September

30, 2016 order granting Plaintiff Homeward Residential, Inc.

("Plaintiff") leave to file a second amended complaint and (2)

to dismiss in part the Second Amended Complaint ("SAC"). For the reasons that follow, Defendant's motion for reconsideration is denied and Defendant's motion to dismiss is denied in part and granted in part.

## I. Background

### A. Factual Background

Unless otherwise noted, the following facts and allegations are drawn from the SAC. In 2006, Defendant, a mortgage originator then known as Option One Mortgage Corporation, sold a pool of over 7,500 mortgage loans with a total principal balance of approximately $1.5 billion as part of a deal related to the issuance of mortgage-backed securities. (SAC ¶¶ 1, 16.) In a mortgage-backed securitization, a mortgage originator or sponsor first assembles a pool of mortgage loans. (Id. ¶ 16.) This pool of loans is then typically transferred by the originator or sponsor to an affiliated entity called the "depositor." (Id.) The depositor then transfers the loans to a specially-created mortgage trust. (Id.) This trust then issues securities—usually referred to as certificates—entitling holders to a certain specified share in the income to the trust as borrowers make their mortgage payments. (Id.) The money received from the sale of the certificates flows back to the originator or sponsor as payment for the loans. (Id.)

Here, Defendant originated or purchased 5,625 mortgages and

transferred them to Option One Mortgage Acceptance Corporation (the "Depositor") in October 2006. (Id. ¶¶ 1, 17.)  This transfer was structured as a sale and is documented in a Mortgage Loan Purchase Agreement ("MLPA") dated October 19, 2006. (Id. ¶ 17.)  The Depositor conveyed "all right, title, and interest" in the mortgage loans to a trust called the Option One Mortgage Loan Trust 2006-3 (the "Trust") by means of a Pooling and Service Agreement ("PSA") dated October 1, 2006. (Id. ¶ 18.) The Trust issued and sold certificates in various classes, with each class having a different claim on the income to the Trust. (Id. ¶ 19.)  In December 2006, Defendant sold an additional 1,958 mortgage loans to the Trust. (Id. ¶ 20.)  In 2008, Plaintiff took over servicing of the Trust loans. (Id. ¶¶ 12-13.)  As servicer, Plaintiff has authority under the PSA to enforce Defendant's obligations under the MLPA. (Id. ¶¶ 27-28).

In the MLPA, Defendant made over fifty representations concerning the mortgage loans sold. (Id. ¶ 21.)  Among other things, Defendant represented that each loan in the Trust was "originated substantially in accordance with the Originator's underwriting criteria." (Id.)  These criteria required the originator to make a "reasonable determination" of an applicant's ability to repay the loan. (Id. ¶ 30.)  Defendant also represented that "[t]here is no material default, breach, violation or event of acceleration existing under the Mortgage

3

or the related Mortgage Note." (Id. ¶ 21.)  Section 3.04 of the
MLPA establishes Defendant's obligation to cure or repurchase
loans within 120 days of discovery or notice of the breach of
any representation, warranty, or covenant that materially and
adversely affects the value of a loan or the interests of the
Trust and its certificateholders in that loan. (Id. ¶ 24.)

In a letter dated March 8, 2012, Wells Fargo Bank N.A., as
Trustee, gave Defendant notice of breaches of representations
and warranties with respect to certain mortgage loans that
materially and adversely affected the value of the loans or the
Trust's interest in those loans and demanded that Defendant
either cure those breaches or repurchase the loans within 120
days. (Id. ¶ 8.)  Defendant responded two months later, denying
any merit to the claims. (Id. ¶ 8; Def.'s Mem. of L. in Support
of Mot. for Reconsideration at 5, ECF No. 129 (filed Oct. 14,
2016) [hereinafter Def.'s Mot. for Reconsideration].)  On May
29, 2015, the Law Debenture Trust Company of New York, as
Separate Trustee, gave Defendant notice of material breaches of
representations and warranties with respect to an additional 649
loans and demanded that Defendant either cure or repurchase
those loans within 120 days. (SAC ¶ 9.)  The May 29 notice
enclosed a letter from Perry, Johnson, Anderson, Miller &
Moskowitz LLP, counsel for certain certificateholders, (the
"Perry Johnson letter") and a set of schedules describing the

4

nature of the breaches. (Id.; Def.'s Mot. for Reconsideration at 5.) The Perry Johnson letter alleged "pervasive and widespread breaches" and reserved the right to give notice of additional breaches. (SAC ¶ 9.) To date, Defendant has not cured or repurchased any loans. (Id. ¶¶ 8-9.)

Plaintiff alleges that Defendant breached its representations and warranties with respect to "many loans" in the Trust and that Defendant was aware that there were widespread and systemic deviations from its underwriting guidelines when the loans in the Trust were approved. (Id. ¶¶ 29, 33.) A review of the loan files confirms the widespread nature of these deviations by revealing numerous instances in which the originating underwriter failed to make a reasonable determination of borrowers' ability to repay the loan. (Id. ¶ 34.) Because Defendant was allegedly aware of the widespread disregard of its underwriting guidelines and resulting pervasive breaches, Plaintiff seeks to require Defendant to honor its contractual obligation to repurchase all Trust loans with respect to which it has breached its representations and warranties, or otherwise compensate the Trust. (Id. ¶ 10.) In the alternative, Plaintiff seeks to require Defendant to repurchase the 745 loans that were included in the March 2012 and May 2015 letters demanding repurchase. (Id.)

## B.  Procedural History

Plaintiff first brought suit in this action on September 28, 2012, alleging breaches as to 96 of the 119 loans listed in the March 8, 2012 Trustee letter. (<u>See</u> Complaint ¶ 21, ECF No. 1 (filed September 28, 2012).)  On September 25, 2013, Defendant moved to dismiss the First Amended Complaint. (<u>See</u> Mot. to Dismiss Am. Compl., ECF No. 38 (filed September 25, 2013).)  On February 14, 2014, Judge Torres, then presiding over this action, denied in part and granted in part Defendant's motion to dismiss. (<u>See</u> Mem. & Order, ECF No. 58 (filed February 14, 2014).)  On July 22, 2014, Judge Torres entered a scheduling order which required Plaintiff to file any motions to amend the complaint by August 22, 2014. (<u>See</u> Civil Case Management Plan & Scheduling Order, ECF No. 65 (filed July 22, 2014).)

After receiving notice of the Perry Johnson letter, on November 25, 2015, Plaintiff sought leave to amend its complaint to add (1) breach claims for the 649 additional loans identified by the Perry Johnson letter, and (2) non-loan-specific allegations that Defendant's breaches were widespread and pervasive, that Defendant knew it was selling loans to the Trust that were in breach, and that Defendant should therefore repurchase all Trust loans that are proven at trial to materially breach those representations and warranties (the "constructive discovery claim"). (<u>See</u> Mot. for Leave to File

Second Am. Compl., ECF No. 102 (filed Dec. 23, 2015).)  On

September 30, 2016, Judge Torres granted leave to file the SAC.

(See Op. & Order, ECF No. 124 (filed Sept. 30, 2016).)

     In her September 30, 2016 opinion and order, Judge Torres

held that Plaintiff met both Federal Rule of Civil Procedure 15

amendment standards and Federal Rule of Civil Procedure 16's

good cause requirement.  Judge Torres held that Plaintiff met

Rule 16's good cause requirement because Plaintiff "diligently

sought to amend" once it became aware of the basis for its

proposed new claims. (Id. at 6.)  First, Plaintiff did not

become aware of claims with respect to loans outside of the

original 96 until May 2015, when it received notice from the

Separate Trustee regarding the 649 additional loans. (Id.)

Second, documents produced by Defendant during discovery

provided evidence to Plaintiff for the first time of Defendant's

widespread and systemic disregard of its representations and

warranties and showed that Defendant knew of its breaches at the

time it sold the loans to the Trust. (Id.)  Although Defendant

argued that Plaintiff did not act diligently in discovering its

new claims because, as servicer, it had access to the 649 loan

files for more than seven years, Judge Torres rejected this

argument because Defendant provided no support for its

contention that Rule 16 diligence imposes a duty to review and

analyze "thousands of loans, each with loan files consisting of

hundreds of pages" to determine whether Defendant had made additional breaches. (Id. at 7.)

Judge Torres next held that Plaintiff met Rule 15's "liberal" amendment standards. (Id.) First, Plaintiff did not unduly delay in seeking to amend the complaint, even though it had possession of the loan files at issue since 2008, because "Plaintiff would have had to review thousands upon thousands of documents in order to discover evidence of the claims it now seeks to add." (Id. at 9.) Second, amendment would not be futile, despite the fact that the statute of limitations had run, because the proposed new claims related back to Plaintiff's original claims. (Id. at 9-12.) In determining that the new claims related back, Judge Torres relied on Nomura Home Equity Loan, Inc. v. Nomura Credit & Capital, Inc., 19 N.Y.S.3d 1 (N.Y. App. Div. 2015), which held that new claims regarding additional loans sold to a securitization trust related back to timely claims because the defendant was on notice, before the suit was filed, that certificateholders were investigating breaches in representations and warranties. (Id. at 10.) Judge Torres noted that in this case, as in Nomura, a pre-suit letter informed Defendant that additional loans were likely being investigated for breaches. (Id. at 11.) Further, Plaintiff here, in both its original and amended complaints, included allegations suggesting Defendant's systemic disregard for its underwriting guidelines

and its knowledge of those breaches at the time of securitization. (Id.)

Judge Torres also rejected Defendant's argument that Plaintiff's claims must be limited to only those loans for which Defendant has been given notice of an alleged breach because "[c]ourts have held that a pleading sufficiently alleges that a defendant discovered its own breaches—triggering its remedial obligations—when the complaint alleges facts indicating the seller's widespread and systemic disregard of its representations." (Id. at 12-13.) Finally, Judge Torres held that because the fact discovery deadline had recently been extended to March 2017, Defendant's assertions regarding prejudice were too speculative to override Rule 15's liberal standard. (Id. at 13.)

Plaintiff filed the SAC on October 6, 2016. On October 14, 2016, Defendant moved for reconsideration of Judge Torres' opinion granting Plaintiff leave to amend. (See Mot. for Reconsideration, ECF No. 128 (filed Oct. 14, 2016).) On November 23, 2016, Defendant filed a motion to dismiss in part the SAC under Rule 12(b)(6) for failure to state a claim. (See Mot. to Dismiss in Part the Second Am. Compl., ECF No. 139 (filed Nov. 23, 2016).) Defendant's motion to dismiss seeks dismissal of the newly alleged claims in the SAC.

## II.  Discussion

### A.    Motion for Reconsideration

#### 1.    Legal Standard

Reconsideration of a previous order is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." In re Health Mgmt. Sys. Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (internal quotation marks omitted).  "The provision for reargument is not designed to allow wasteful repetition of arguments already briefed, considered and decided." Schonberger v. Serchuk, 742 F. Supp. 108, 119 (S.D.N.Y. 1990).  "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 at 790).  Accordingly, a request for reconsideration under Local Rule 6.3 must "demonstrate controlling law or factual matters put before the court in its decision on the underlying matter that the movant believes the court overlooked and that might reasonably be expected to alter the conclusion reached by the court." Fisk v. Letterman, 501 F. Supp. 2d 505, 530 (S.D.N.Y. 2007).

Local Rule 6.3 is intended to "ensure the finality of decisions and to prevent the practice of a losing party . . . plugging the gaps of a lost motion with additional matters." S.E.C. v. Ashbury Capital Partners, No. 00 Civ. 7898 (RCC), 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (internal quotation marks omitted).  A court must "narrowly construe and strictly apply Local Rule 6.3 so as to avoid duplicative rulings on previously considered issues and to prevent the Rule from being used to advance different theories not previously argued, or as a substitute for appealing a final judgment." Fisk, 501 F. Supp. 2d at 530.

## 2.    Analysis

Defendant claims that Judge Torres overlooked or misunderstood Plaintiff's ability to present its additional claims on a timely basis.  In support of this contention, Defendant makes three principal arguments.

First, Defendant argues that Judge Torres' opinion was incorrectly based on the contention that Plaintiff had no duties to the Trust or certificateholders. (Def.'s Mot. for Reconsideration at 8.) Defendant claims that Plaintiff, as the servicer of Trust loans, had an obligation under the PSA to maximize the recovery of principal and interest on a defaulted loan and, as part of this obligation, Plaintiff was expected to "pursue all valid repurchase claims where that course would

11

maximize recovery to the Trust." (<u>Id.</u> at 11.)  Accordingly,

because Plaintiff certified annually that it fulfilled its

obligations as servicer, Plaintiff was "exercising its business

judgment all along with regard to all such loans in the Trust"

and should have asserted its new claims on a timely basis. (<u>Id.</u>

at 11-12; Def.'s Reply Mem. of L. in Support of Mot. for

Reconsideration at 7, ECF No. 137 (filed Nov. 10, 2016).)

        Contrary to Defendant's assertion, Judge Torres did not

find that Plaintiff had no duty to the Trust or

certificateholders.  In fact, Defendant did not raise this

argument in its opposition to Plaintiff's motion to amend.

Given that a reconsideration motion cannot be used to "advance

different theories not previously argued," Defendant cannot

claim that Judge Torres overlooked this issue, as it was not

raised on the motion to amend. <u>Fisk</u>, 501 F. Supp. 2d at 530; <u>see</u>

<u>also</u> <u>Ambac Assur. Corp. v. EMC Mortg. Corp.</u>, No. 08 CIV. 9464

RMB THK, 2011 WL 308276, at *3 (S.D.N.Y. Jan. 28, 2011)

("[Defendant] never raised this issue in the original briefing

of the motion to amend, and, therefore, cannot seek

reconsideration on this basis.").  Further, Judge Torres already

considered and rejected Defendant's similar argument that

Plaintiff "did not act diligently in discovering the new claims

because it had access for more than seven years to the evidence

purportedly supporting them" as servicer of the loans, because

Rule 16 diligence does not impose a duty to review and analyze

"thousands of loans." (Op. & Order at 6-7.)

Second, Defendant argues that Plaintiff's new loan-level

claims fail to meet Rule 15 and 16 standards because the

information in the Perry Johnson letter was not new to Plaintiff

in 2015 and thus, discovery of additional breaches did not, as

Judge Torres held, require a review of individual loan files.

(Def.'s Mot. for Reconsideration at 12.) Defendant contends

that the information in the Perry Johnson letter was in fact

based on data that was supplied to the Trustee by the servicer

on a monthly basis and was also publicly available in SEC

filings by the Trust. (Id. at 12-13.) Because Plaintiff has had

access to all of this information since 2008, Defendant argues

that it could have easily asserted claims based on this

information when it first brought suit in 2012. (Id. at 13.)[1]

---

[1] In a June 30, 2017 letter to the Court, Defendant brought to the
Court's attention "new facts" regarding Plaintiff's "recent
admissions" that Defendant claims would further justify
reconsideration of Judge Torres' opinion. (June 30, 2017 Letter from
Michael Calhoon to the Honorable John F. Keenan at 1, ECF No. 211
(filed June 30, 2017).) Defendant explains that Plaintiff recently
revealed that the study which led to the discovery of breaches in the
additional 649 loans was "limited to publicly-available data about the
loans" and was not based on a review of the loan files itself. (See
id. at 2.) However, this information is not a "new fact." Indeed, as
discussed above, in its October 14, 2016 motion for reconsideration,
Defendant argues that Plaintiff did not meet Rule 15 standards for
amendment because the information in the Perry Johnson letter "[was]
not derived from the [loan] files" but "was available from public
sources." (Def.'s Mot. for Reconsideration at 13, 15.)

Judge Torres addressed in detail Defendant's arguments that
Plaintiff unduly delayed in bringing its claims because it has
had access to the underlying data since 2008.  Defendant argued
in its opposition to Plaintiff's motion to amend that Plaintiff
had access to the underlying information in the Perry Johnson
letter for many years. (Def.'s Mem. of L. in Opp'n to Pl.'s Mot.
for Leave to File Second Am. Compl. at 9, ECF No. 105 (filed
Dec. 27, 2015).)   In her Opinion and Order, Judge Torres
considered and rejected Defendant's argument that "Plaintiff, as
Servicer of the Trust, has had in its possession the loan files
for every loan in the Trust, as well as detailed records on the
loans' performance, since it became Servicer in April 2008."
(Op. & Order at 7, 9) (emphasis added).  Thus, this is not an
issue that was "overlooked," as Defendant claims, but one that
was already litigated and decided. See Associated Press v. U.S.
Dep't of Def., 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005) (a motion
for reconsideration is not "an occasion for repeating old
arguments previously rejected").

    Third, Defendant argues that Plaintiff's new constructive
discovery claim also fails Rule 15 and 16 standards because
Plaintiff was aware of the facts underlying its constructive
discovery claim at the outset of this action. (Def.'s Mot. for
Reconsideration at 16-17.)  In support of this argument,
Defendant notes that Plaintiff asserted a constructive discovery

claim in the original complaint in a related case, <u>Homeward</u>
<u>Residential, Inc. v. Sand Canyon Corp.</u>, No. 12 Civ. 5067
(S.D.N.Y. 2012), filed in May 2012, and therefore could and
should have raised it in their original complaint in this
action. (<u>Id.</u> at 17.)  Defendant also claims that Plaintiff
acknowledges in the SAC that it was aware of systemic
abandonment of Defendant's underwriting guidelines "through the
high losses and delinquency and default rates for loans in the
Trust," which is evidence that has always been available to
Plaintiff and should have been asserted as part of the original
complaint in 2012. (<u>Id.</u> at 18.)

   With respect to Defendant's argument that Plaintiff
asserted a constructive discovery claim in the related <u>Homeward</u>
<u>Residential, Inc.</u> case and thus, should have alleged that claim
at the outset in this action, Judge Torres was certainly aware
of this fact, as she was the presiding Judge over both actions
on September 30, 2016, and she explicitly noted in her Opinion
and Order allowing amendment that the constructive discovery
claim in the related case had survived a motion to dismiss when
rejecting Defendant's arguments that such a claim would be
futile in this action. (Op. & Order at 12.)  Thus, Judge Torres
did not overlook this fact.

   The remainder of Defendant's arguments on Plaintiff's
constructive discovery claim have already been litigated and

decided. As noted above, Judge Torres rejected Defendant's
argument that Plaintiff unduly delayed in bringing its claims
because the evidence underlying the claims was "readily
available" to Plaintiff since the commencement of this action.
(Id. at 8-9.) Judge Torres also rejected Defendant's argument
that Plaintiff admits in the SAC that it has known about
Defendant's systemic breaches of underwriting guidelines since
2012. Judge Torres held that "the most that is implied [in the
SAC] about 2012 . . . is that that was the first step in what
has now culminated in an awareness of [Defendant's] widespread
and systematic breaches." (Id. at 7 n.7.) Indeed, Judge Torres
held that, even though Plaintiff had access to the underlying
information in 2012, it did not become aware of claims outside
of the original 96 loans until 2015, and thus, Plaintiff met
Rule 16's good cause requirement. (Id. at 6-7.) Further,
because Plaintiff included allegations in both its original and
amended complaints that suggested Defendant's systemic disregard
for its underwriting guidelines and its knowledge of breaches of
representations—along with the allegation that further discovery
would provide evidence that Defendant violated its underwriting
standards—Judge Torres held that Plaintiff's constructive
discovery claim related back to its timely claims under Rule 15
because Defendant was on notice that "a claim for widespread and
systemic breaches" would likely be asserted. (Id. at 11-12.)

Accordingly, Judge Torres did not overlook this argument and it could not reasonably be expected to alter the court's conclusion.

In sum, Defendant has not provided the Court with sufficient grounds justifying the "extraordinary remedy" of reconsideration and Defendant's motion for reconsideration of the Opinion and Order allowing amendment is denied.

### B.    Motion to Dismiss

#### 1.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Matson v. Bd. of Educ., 631 F.3d 57, 63 (2d Cir. 2011) (internal quotation marks omitted).  In determining the adequacy of the complaint, the Court may consider any document attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents which are integral to the complaint. Int'l Audiotext Network, Inc. v. AT & T Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam).  On a motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw reasonable inferences in the

plaintiff's favor. <u>Tsirelman v. Daines</u>, 794 F.3d 310, 313 (2d Cir. 2015).  In addition, the Court "should resolve any contractual ambiguities in favor of the plaintiff." <u>Subaru Distributors Corp. v. Subaru of Am., Inc.</u>, 425 F.3d 119, 122 (2d Cir. 2005).

## 2. Analysis

### a. Constructive Discovery Claim

In the SAC, Plaintiff adds a constructive discovery claim alleging that Defendant knew of widespread and pervasive breaches at the time it sold the loans to the Trust and should be required to repurchase all loans with respect to which it has breached its representations and warranties, or otherwise compensate the Trust for these breaches. (SAC ¶¶ 10, 29.) Defendant argues that Plaintiff's constructive discovery claim should be dismissed because the "clear and unambiguous" language of the MLPA requires that Plaintiff either put Defendant on timely notice as to breaches in specific loans or identify particular loans that Defendant itself allegedly discovered to be in breach. (Def.'s Mem. of L. in Supp. of Mot. to Dismiss at 7-8, ECF No. 140 (filed Nov. 23, 2016).)  Section 3.04 of the MLPA requires Defendant to repurchase a loan only upon "discovery by or notice to [Defendant] of [a material] breach of a representation or warranty" and further states that the obligation to repurchase or cure materially-breaching loans is

18

the "sole remed[y] of the Purchaser respecting . . . a breach of

the representations and warranties." (Mortgage Loan Purchase

Agreement at 21-22, SAC Ex. E, ECF No. 126-96 (filed Oct. 6,

2016) [hereinafter MLPA]).  Thus, according to Defendant,

Plaintiff cannot allege a constructive discovery claim because

it would be an end-run around the MLPA's requirement that

Plaintiff's repurchase demands be made on a loan-by-loan basis.

(Def.'s Mem. of L. in Supp. of Mot. to Dismiss at 8-9.)

Even if the Court were to find that Defendant is correct

that Plaintiff will ultimately have to demonstrate breach on a

loan-by-loan basis, "this is not a pleading requirement."

Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co., 172 F.

Supp. 3d 700, 713 (S.D.N.Y. 2016).  "A plaintiff is not required

to plead the specific actual knowledge of a defendant with

respect to the particular deficiencies of a particular loan."

Id.  A plaintiff has satisfied their pleading burden where its

allegations "raise a reasonable expectation that discovery will

reveal evidence proving their claim." Id. (internal quotation

marks omitted).

Several courts have allowed constructive discovery claims

to proceed at the pleading stage in the face of similar remedies

provisions.  In Deutsche Alt-A Securities Mortgage Loan Trust,

Series 2006-OA1 v. DB Structured Products, Inc., 958 F. Supp. 2d

488, 496-97 (S.D.N.Y. 2013), the court considered whether the

plaintiff could bring claims related to loans for which it had
not previously given the defendant notice of breaches.  The
contractual remedy provision at issue similarly required that
the defendant "repurchase breaching loans upon either notice or
discovery" and stated that "[t]he obligations of [defendant] set
forth in this Section . . . to cure or repurchase a defective
Mortgage loan  . . . constitute the sole remedies . . . against
[defendant]." Deutsche Alt-A Sec. Mortg. Loan Tr., Series 2006-
OA1, 958 F. Supp. 2d at 497.  The plaintiff alleged that the
defendant had discovered "numerous breaches . . . including
[those] not specifically listed in the Breach Notices" prior to
the sale of loans to the trust and thus, under the MLPA, the
defendant's obligation to repurchase would have been triggered
upon its own discovery and would not require notice by the
plaintiff. Id.  The court held that the plaintiff had
sufficiently alleged breaches of contract, even with respect to
loans not the subject of breach notices, because "[w]hether
these loans did, in fact, breach the [representations and
warranties] and whether [defendant] knew, or should have known,
of these breaches at the time of its review, is a question of
fact [and] [i]t would therefore be premature to dismiss
Plaintiff's claims as to loans which are not the subject of any
Breach Notices at this stage." Id.; see also Fixed Income
Shares:  £Series M v. Citibank N.A., 130 F. Supp. 3d 842, 854

(S.D.N.Y. 2015) (allegations regarding defendant's general knowledge about widespread breaches of representations were sufficient to meet plaintiff's burden at motion-to-dismiss stage even though "none of these allegations demonstrates [defendant's] knowledge of deficiencies with respect to any particular loan"); U.S. Bank Nat. Ass'n v. GreenPoint Mortg. Funding, Inc., 147 A.D.3d 79, 86 (N.Y. App. Div. 2016) (allegation that defendant breached repurchase protocol because it knew or should have known of breaches was "sufficient to withstand motion to dismiss"); ACE Sec. Corp. v. DB Structured Prods., Inc., 2013 WL 6153206, at *2 (N.Y. Sup. Ct. Nov. 21, 2013) (plaintiff was not precluded from bringing put-back claims for non-noticed loans where plaintiff alleged that defendant knew that the majority of the subject loans were nonconforming and failed to repurchase despite discovery of nonconformance).

Defendant also argues that Plaintiff's constructive discovery claims should be dismissed under ACE Secs. Corp. v. DB Structured Prods., Inc., 25 N.Y.3d 581 (2015), in which, Defendant purports, the court held that notice is a necessary precondition to pursuing the repurchase remedy. (Def.'s Mem. of L. in Supp. of Mot. to Dismiss at 8.) However, as articulated in U.S. Bank Nat. Ass'n v. GreenPoint Mortg. Funding, Inc., 147 A.D.3d 79, 85-86 (N.Y. App. Div. 2016), the court in ACE Secs. Corp. held that a breach notice is a condition precedent to a

claim predicated on <u>actual notice of default</u>, as opposed to claims predicated on nonconforming mortgages that the defendant itself discovered.  To require Plaintiff to notify Defendant about the existence of nonconforming mortgages that Defendant already knew about or would have discovered through its own diligence would be "wholly illogical." <u>U.S. Bank Nat. Ass'n</u>, 147 A.D.3d at 85.  For constructive discovery claims, "no precommencement breach notice [is] necessary," because under the MPLA, the cure period is triggered upon discovery by <u>or</u> notice to Defendant. <u>Id.</u>

Defendant next argues that even if Plaintiff could advance a constructive discovery theory consistent with the MLPA, it has failed to allege facts to support a reasonable inference that Defendant sold many loans to the Trust that it knew at the time were in breach of representations and warranties. (Def.'s Mem. of L. in Supp. of Mot. to Dismiss at 10.)

Defendant is incorrect.  "[P]laintiffs can survive a motion to dismiss by alleging massive breaches of representations and warranties and by referring to the mortgage industry's practices of ignoring underwriting guidelines and engaging in predatory lending." <u>Phoenix Light SF Ltd.</u>, 172 F. Supp. 3d at 713. Plaintiff has provided evidence sufficient to support a plausible allegation that Defendant was aware of systemic disregard for its underwriting guidelines at the time it sold

22

the loans to the Trust.  Plaintiff's evidence showing that
Defendant "was aware that there were widespread and systemic
deviations from [its] underwriting guidelines" includes (1) a
2004 investigation by the U.S. Attorney's Office of the Eastern
District of Pennsylvania into Defendant's origination practices
that found "significant fraud," including "inflated appraisals,
fictitious charitable grants for borrowers to apply toward down
payments, [and] misrepresentations concerning cash brought to
closing," (2) a 2006 H&R Block Internal Audit Report which
concluded that Defendant's underwriting guidelines were
"frequently not complied with at the branch level," (3)
allegations in other lawsuits regarding Defendant's violations
of its underwriting guidelines from 2004-2007, and (4) internal
emails from 2006 and 2007 in which Defendant's employees
describe pervasive disregard of underwriting guidelines
including "red flags that are missed or ignored on loans and
appraisals," "forged lease agreements," and "ungodly stated
income." (SAC ¶¶ 3-4, 33, 42-44, 46.)  Plaintiff also provides
specific examples of breaches in underwriting guidelines from
individual loan files including the originating underwriter's
failure to make a reasonable determination of borrowers' stated
debts and/or employment. (Id. ¶¶ 33-41.)

As Judge Torres held in her opinion granting Plaintiff's
motion to amend, "a pleading sufficiently alleges that a

defendant discovered its own breaches—triggering its remedial obligations—when the complaint alleges facts indicating the seller's widespread and systemic disregard of its representations." (Op. & Order at 13); see also Phoenix Light SF Ltd., 172 F. Supp. 3d at 713 (denying motion to dismiss constructive discovery claims where complaint included "specific examples of alleged problems with origination policies" and plaintiff alleged that originators of the loans had been investigated for deficient underwriting practices); BlackRock Allocation Target Shares: Series S. Portfolio v. Wells Fargo Bank, Nat'l Ass'n, No. 14CIV10067KPFSN, 2017 WL 1194683, at *8 (S.D.N.Y. Mar. 30, 2017) (plaintiffs adequately alleged defendant's knowledge of breaches in representations and warranties on the basis of defendant's internal documents reflecting improper loan underwriting); Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co., No. 14-CV-4394 (AJN), 2016 WL 439020, at *6 (S.D.N.Y. Feb. 3, 2016) ("Plaintiff's detailed allegations of high default rates, staggering economic losses, and widespread investigation into RMBS securitization are sufficient to 'allow[ ] the court to draw the reasonable inference' that R&Ws were breached on a loan-by-loan basis." (quoting Iqbal, 556 U.S. at 678)). Accordingly, Plaintiff has alleged facts sufficient to support a reasonable inference that Defendant was aware of systemic disregard for its underwriting

guidelines and widespread breaches at the time it sold the loans to the Trust.

Finally, Defendant argues that Plaintiff's constructive discovery claim fails to satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). (Def.'s Mem. of L. in Supp. of Mot. to Dismiss at 14.) Where a complaint alleges fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). However, "investor put-back actions are not fraud cases" because "[t]he contracting parties specifically negotiated representations and warranties and the remedy for breach of these contractual provisions—the Repurchase Protocol." ACE Sec. Corp., 2013 WL 6153206, at *2. The gravamen of Plaintiff's claim—that Defendant discovered breaches of representations and warranties in loans it sold to the Trust but failed to cure or repurchase those loans in violation of its contractual obligations under the MLPA—is breach of contract, not fraud. See Citigroup Mortg. Loan Tr. 2007-AMC3 v. Citigroup Glob. Mkts. Realty Corp., No. 13 CIV. 2843 GBD, 2014 WL 1329165, at *4 (S.D.N.Y. Mar. 31, 2014) ("Because Plaintiff seeks a cognizable remedy on a traditional breach of contract claim that does not sound in fraud, Rule 9(b) does not apply."). Further, as discussed below, Plaintiff's claims related to the "no-fraud" representation are dismissed, after Plaintiff's withdrawal;

thus, no fraud claims remain that would require Plaintiff to meet Rule 9(b)'s heightened pleading standard.

### b.    New Loan-Specific Claims

### i.Claims for Breach of Representations Related to Title, Priority Liens, and Insurance

The SAC adds claims for specific loans under the theory that high loss severities[2] for these loans indicate that Defendant breached its representations that (1) it had valid title to the loans (MLPA § 3.01(a)(1)), (2) the mortgage note and mortgages were valid and enforceable and gave Defendant a priority over other liens (MLPA § 3.01(a)(6)-(8)), (3) there was title insurance for each loan (MLPA § 3.01(a)(15)), and (4) everything on the mortgage schedule was true, including that some of the loans had private mortgage insurance (MLPA § 3.01(a)(4)). (SAC ¶¶ 55-56.)

Defendant argues that Plaintiff has not pleaded any facts to support these allegations but instead asks the Court to infer that these breaches must have occurred solely because the Trust lost money on these loans. (Def.'s Mem. of L. in Support of Mot. to Dismiss at 16.)  This inference is "unsound" according to Defendant because a high loss severity may happen for any number

---

[2] Loss severity is a measure of the loss made when there is a default on a loan and the property securing the loan is sold. (Pl.'s Mem. of L. in Opp'n to Def.'s Mot. to Dismiss at 16, ECF No. 146 (filed Dec. 14, 2016).)  The loss severity for any loan is that loss stated as a percentage of the original principal balance of the loan. (Id.)

of reasons unrelated to breaches of the specific warranties enumerated in the SAC, including circumstances surrounding the 2008 housing crisis. (Id.)  Plaintiff argues in response that facts giving rise to a reasonable inference of liability are sufficient to defeat a motion to dismiss and the fact that the Trust suffered such high losses on these loans leads to the plausible inference that Defendant's representations regarding title, security, and insurance were false because, had these safeguards been in place, the loans would have been protected against such high loss severities. (Pl.'s Mem. of L. in Opp'n to Def.'s Mot. to Dismiss at 17.)

When a plaintiff alleges facts from which the Court must infer liability, the pleading standard is "particularly critical." Phoenix Light SF Ltd. v. Bank of New York Mellon, No. 14-CV-10104 VEC, 2015 WL 5710645, at *3 (S.D.N.Y. Sept. 29, 2015).  "[F]actual content that is 'merely consistent with,' rather than suggestive of, a finding of liability will not support a reasonable inference." N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC, 709 F.3d 109, 121 (2d Cir. 2013) (quoting Twombly, 550 U.S. at 556).  But a "reasonable inference" in the context of a complaint pled under Federal Rule of Civil Procedure 8 "need not be 'as compelling as any opposing inference' one might draw from the same factual allegations." Id. (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551

U.S. 308, 324 (2007)).  "[T]he existence of other, competing inferences does not prevent the plaintiff's desired inference from qualifying as reasonable unless at least one of those competing inferences rises to the level of an 'obvious alternative explanation.'" Id.

At this stage, Plaintiff's allegations regarding high loss severities of specific loans are sufficient to support a reasonable inference that Defendant breached representations and warranties related to good title, priority liens, and insurance—safeguards designed to protect the Trust against huge losses. Taken together with Plaintiff's allegations regarding high rates of delinquency and foreclosure in loans sold to the Trust and Defendant's widespread disregard for its underwriting guidelines (SAC ¶¶ 5-6), Plaintiff's claims create a plausible inference that Defendant is liable for the alleged breaches. See Blackrock Core Bond Portfolio v. U.S. Bank Nat'l Ass'n, 165 F. Supp. 3d 80, 99 (S.D.N.Y. 2016) (Federal Rule of Civil Procedure 8 and Twombly do not "require certainty as ultimate victory" but rather require that "plaintiffs' allegations, construed as a whole, put forward sufficient facts to allege a plausible violation of the law").  Although Defendant offers a competing inference—that the 2008 housing crisis could have been the cause of high losses on the loans—this does not render Plaintiff's inference unreasonable, nor is Defendant's competing inference

28

an obvious alternative explanation given Defendant's alleged

widespread disregard for its underwriting guidelines. <u>See, e.g.</u>,

<u>In re Aluminum Warehousing Antitrust Litig.</u>, 95 F. Supp. 3d 419,

437 (S.D.N.Y. 2015) ("[W]hile there may be a myriad of

explanations for the conduct described . . . if the inference

plaintiffs ask the Court to draw is not unreasonable, then that

is the inference the Court must draw at this stage.").

### ii. Claims for Breach of "No-Fraud" Representation

Plaintiff newly alleges in the SAC that specific loans

breached MLPA § 3.01(a)(24), the "no-fraud" representation,

which represents that, to the originator's knowledge, there was

no fraud in the origination of the loan. (SAC ¶ 40.) Plaintiff

has since withdrawn its claims for breach of the no-fraud

representation as to the new 649 loans, recognizing that it

cannot meet Rule 9(b)'s heightened pleading standard, but

contends that it has not waived the right to re-notice breach of

this warranty at a later date "if discovery or expert study

provide grounds for asserting breach with particularity."

(October 27, 2016 Letter from Brian V. Otero to the Honorable

Analisa Torres at 2, ECF No. 132 (filed October 27, 2016).)

Defendant argues that Plaintiff cannot reserve the right to

bring these claims indefinitely and asks that the Court dismiss

these claims with prejudice. (Def.'s Mem. of L. in Supp. of Mot.

to Dismiss at 18.)

Federal Rule of Civil Procedure 15 instructs a court to "freely give leave" to amend "when justice so requires." FED. R. CIV. P. 15(a)(2). However, amendment "is not warranted absent some indication as to what [a plaintiff] might add to [its] complaint in order to make it viable." Shemian v. Research In Motion Ltd., 570 F. App'x 32, 37 (2d Cir. 2014) (quoting Horoshko v. Citibank, N.A., 373 F.3d 248, 249 (2d Cir. 2004)). The Court recognizes that Plaintiff commenced this action in 2012 and moved to amend its claims over a year and a half prior to the date of this Order. Despite numerous opportunities, Plaintiff has failed to adequately plead a viable claim for breach of the no-fraud representation. Accordingly, Plaintiff's claims related to breaches of the no-fraud representation are dismissed with prejudice.

### iii. Claims for Breach of Representations Concerning Payment Defaults

The SAC contains new allegations as to hundreds of loans based on alleged breaches of the representations in MLPA §§ 3.01(a)(4), (16), and (29), all of which relate to borrower payment delinquencies. Plaintiff's claims for breaches of each provision are discussed in turn below.

### 1. Breaches of § 3.01(a)(4)

Plaintiff alleges that Defendant breached 3.01(a)(4)—which warrants that "the information set forth on each Schedule is

true and correct in all material respects as of the Cut-off Date"—by stating in the mortgage loan schedule of specific loans that it had received payments from certain borrowers when in fact the borrowers had missed the relevant payments, according to later Trustee reports. (SAC ¶ 56.)  Defendant argues that the fact that a later report provided updated information regarding borrower payments does not indicate that the mortgage loan schedule was not true and correct as of the closing date. (Def.'s Mem. of L. in Supp. of Mot. to Dismiss at 23.) Accepting the factual allegations in the complaint as true, Plaintiff has adequately pleaded claims for breach of § 3.01(a)(4).  Whether the borrowers actually missed those payments, making the mortgage loan schedules false as of the closing date, is an issue of fact not appropriately decided on a motion to dismiss.

## 2.   Breaches of § 3.01(a)(16)

Plaintiff claims that 137 loans violated § 3.01(a)(16), which provides that "there is no material default, breach, violation or event of acceleration existing under the related Mortgage . . . other than a payment delinquency that is for a payment due after the date specified in (i) above"—the "no-defaults" provision—because the loans were delinquent as of October 1, 2006 and Defendant's no-defaults representation was given as of the closing date of October 27, 2006. (SAC ¶ 57.)

Defendant argues that Plaintiff's interpretation of § 3.01(a)(16) is incorrect because the exception for "a payment delinquency that is for a payment due date after the date specified in (i) above" can only refer to § 3.01(a)(9), which states that "[a]s of the last calendar date of September 2006, none of the Mortgage Loans are Delinquent." (Def.'s Mem. of L. in Supp. of Motion to Dismiss at 19-20.) Thus, according to Defendant, there is an exception in § 3.01(a)(16) for delinquencies after September 30, 2006 and these 137 loans were not in default as of the closing date. (Id.) However, as both Plaintiff and Defendant admit, there is no "(i) above" to which this provision can refer—it was clearly a drafting error. (Id. at 20; Pl.'s Mem. of L. in Opp'n to Def.'s Mot. to Dismiss at 20.) Plaintiff argues that § 3.01(a)(16) is ambiguous and the obvious error shows that the parties had no fixed intent about any "as-of date" for payment defaults other than the closing date, October 27, 2006, which governs all of Defendant's representations under MLPA § 3.01(a). (Pl.'s Mem. of L. in Opp'n to Def.'s Mot. to Dismiss at 21.) Both Plaintiff and Defendant ask the Court to look to other agreements between the parties, including previous MLPAs, and the parties' subsequent course of dealing to determine their intent concerning any exception in the no-defaults provision. (Id. at 21; Def.'s Mem. of L. in Supp. of Mot. to Dismiss at 20.)

Plaintiff also alleges that an additional 68 loans that were sold to the Trust in December 2006 (the "subsequent loans") are in breach of the no-defaults representation because the borrower had missed their November 1 or December 1 payments.[3] (SAC ¶ 57.) The parties disagree on whether there is a cut-off date for delinquencies in the no-defaults representation for subsequent loans—Defendant claims that the September 30, 2006 exception in MLPA § 3.01(a)(9) also applies to these subsequent loans, thus these loans could not have been in default, and Plaintiff argues that under the language of PSA § 2.08(c), the September 30, 2006 date doesn't apply to subsequent loans. (Pl.'s Mem. of L. in Opp. to Def.'s Mot. to Dismiss at 23; Def.'s Mem. of L. in Supp. of Mot. to Dismiss at 22 n.9.)

First, "when considering a motion to dismiss, courts should resolve any contractual ambiguities in favor of the plaintiff without resorting to parol evidence." D.C. USA Operating Co. v.

---

[3] Defendant argues that the claims related to 68 subsequent loans are not made clear in the SAC. However, as Defendant states in its motion to dismiss, the Perry Johnson letter claims that 68 loans were in breach due to missed payments in November and December 2006. (Def.'s Mem. of L. in Supp. of Mot. to Dismiss at 22 n.9.) When assessing the legal sufficiency of a claim, the Court may consider "the facts alleged in the complaint, and any documents attached as an exhibit to the complaint or incorporated by reference." Miotto v. Yonkers Public Sch., 534 F. Supp. 2d 422, 425 (S.D.N.Y. 2008) (citations omitted); see also FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes.") The Perry Johnson letter is an attachment to the SAC, accordingly, the claims for breach of the no-defaults provision as to 68 subsequent loans are included in the SAC.

<u>Indian Harbor Ins. Co.</u>, 07 Civ. 0116, 2007 WL 945016, at *8
(S.D.N.Y. Mar. 27, 2007).  Thus, at this stage of the
proceeding, the Court declines to consider any extrinsic
evidence presented by the parties as to their intent regarding
the drafting of § 3.01(a)(16).  "[W]hen the language of a
contract is ambiguous, its construction presents a question of
fact, which of course precludes summary dismissal on a Rule
12(b)(6) motion." <u>Maniolos v. United States</u>, 741 F. Supp. 2d
555, 567 (S.D.N.Y. 2010), <u>aff'd</u>, 469 F. App'x 56 (2d Cir. 2012)
(internal quotation marks and citations omitted).  Whether or
not § 3.01(a)(16) contains an exemption for any loans that were
delinquent after September 30, 2006 is not clear based on the
language in that provision.  Thus, this contractual ambiguity is
resolved in Plaintiff's favor and the Court assumes, for the
purposes of this motion, that there is no exception in §
3.01(a)(16) for payment delinquencies after September 30, 2006.
Accordingly, Plaintiff has adequately alleged claims for breach
of § 3.01(a)(16) as to the 137 loans sold to the Trust on
October 27, 2006.

As to the additional 68 loans sold to the Trust in December
2006, it is not clear based on the language of either the MLPA
or the PSA as to the parties' intent regarding which date—
September 30, 2006, or the "Subsequent Cut-Off Date" in PSA §
2.08(c), or some other date—applies to determining whether

34

subsequent loans are in breach of the no-defaults provision.
Accordingly, this issue cannot be resolved at the pleading stage
and Defendant's motion to dismiss Plaintiff's claims for breach
of the no-defaults provision as to the 68 subsequent loans is
denied. Psenicska v. Twentieth Century Fox Film Corp., 07 Civ.
10972, 08 Civ. 1571, 08 Civ. 1828, 2008 WL 4185752, at *4
(S.D.N.Y. Sept. 3, 2008) ("Where there are alternative,
reasonable interpretations of a contract term rendering it
ambiguous, the issue should be submitted to the trier of fact
and is not suitable for disposition on a motion to dismiss.")

### 3.    Breaches of § 3.01(a)(29)

Plaintiff alleges a breach as to one loan of § 3.01(a)(29)
which states that "[p]rincipal payments on the Mortgage Loan
commenced no more than two months after the proceeds of the
Mortgage Loan were disbursed." (SAC ¶ 59; MLPA § 3.01(a)(29).)
According to Plaintiff, this breach was material because "[t]he
purpose of the requirement that repayment of principal begin
within two months of the loan being made is to protect the Trust
from underreporting of delinquent loans, which are likely to
result in losses to the Trust." (SAC ¶ 59.)  Defendant argues
that the first payment for this loan was due 66 days after the
proceeds were distributed, rather than 60 days as required under
§ 3.01(a)(29), and Plaintiff has not explained how setting the
borrower's first-payment due date less than a week late could

have materially and adversely affected the value of the loan as of the date that notice of breach was provided. (Def.'s Mem. of L. in Supp. of Mot. to Dismiss at 22.)

Under MLPA § 3.04, a breach by Defendant must materially and adversely affect the value of a loan or the interests of the Trust and its certificate holders in the loan. Plaintiff has alleged that this particular loan breached Defendant's representation in § 3.01(a)(29) and that that breach was material because, according to the Perry Johnson Letter, "[t]he Trust suffered a total loss on this loan." (SAC ¶ 59; Def.'s Mem. of L. in Supp. of Mot. to Dismiss at 23 (citing SAC Ex. C, ECF No. 126-94 at 22-23 (filed Oct. 6, 2016)).) Resolving all inferences in favor of Plaintiff, this claim for breach of § 3.01(a)(29) is adequately alleged. Whether or not setting the first-payment date six days late did in fact materially and adversely affect the value of the loan is an issue of fact not appropriately decided on a motion to dismiss.

Accordingly, Defendant's motion to dismiss Plaintiff's claims for breaches of MLPA §§ 3.01(a)(4), 3.01(a)(16), and 3.01(a)(29) is denied.

### iv. Claims for Breach of Representation That Loans Were Originated Substantially in Accordance With Underwriting Guidelines

Plaintiff alleges that 320 loans breached § 3.01(a)(28) which represents that "[e]ach Mortgage Loan was originated

36

substantially in accordance with the Originator's underwriting criteria" because the borrowers had either debt-to-income ("DTI") ratios in excess of the applicable underwriting guidelines or FICO scores below the applicable underwriting guidelines. (SAC ¶ 58; MLPA § 3.01(a)(28).) Defendant claims that because variances from DTI and FICO thresholds are permissible under the guidelines, the mere fact that a borrower did not meet one of those thresholds, without additional factual allegations, does not demonstrate a breach of the underwriting guidelines. (Def.'s Mem. of L. in Supp. of Mot. to Dismiss at 24.)  As Defendant admits, Judge Torres already held in her opinion on Defendant's motion to dismiss the First Amended Complaint that whether these deviations from the underwriting guidelines were a permissible variance or a breach of § 3.01(a)(28) is "an issue of fact that cannot be decided on a motion to dismiss." (Id.)  The Court agrees.  Accordingly, Plaintiff has adequately pleaded claims for breach of § 3.01(a)(28).

## CONCLUSION

For the reasons stated above, Defendant's motion for reconsideration is DENIED and Defendant's motion to dismiss in part the second amended complaint is DENIED in part and GRANTED in part only as to Plaintiff's claims for breach of MLPA § 3.01(a)(24), the "no-fraud" representation.  The Clerk of Court

is respectfully directed to terminate the motions docketed at
ECF Nos. 128 and 139.

**SO ORDERED.**

Dated:    New York, New York
        August 22, 2017

                             John F. Keenan
                        United States District Judge