```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------- X
HOMEWARD RESIDENTIAL, INC.,     :
solely in its capacity as       :
Servicer for the Option One     :
Mortgage Loan Trust 2006-3,     :
for the benefit of the Trustee  :
and the holders of Option One   :
Mortgage Loan Trust 2006-3      :
Certificates,                   :     No. 12 Civ. 7319 (JFK)
             Plaintiff,         :     OPINION & ORDER
                                :
     -against-                  :
                                :
SAND CANYON CORPORATION, f/k/a  :
Option One Mortgage             :
Corporation,                    :
             Defendant.         :
------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/24/2018

APPEARANCES

FOR PLAINTIFF HOMEWARD RESIDENTIAL, INC.:
    Brian V. Otero
    Stephen R. Blacklocks
    Michael B. Kruse
    HUNTON & WILLIAMS LLP

FOR DEFENDANT SAND CANYON CORPORATION:
    Michael L. Calhoon
    Richard P. Sobiecki
    Vernon Cassin
    Douglas Henkin
    BAKER BOTTS L.L.P.
    James Goldfarb
    Daniel T. Brown
    MURPHY & McGONIGLE, P.C.

**JOHN F. KEENAN, United States District Judge:**

Before the Court is Defendant Sand Canyon Corporation's ("Defendant") motion to certify for interlocutory appeal under 28 U.S.C. § 1292(b) the September 30, 2016 Order (the "September 30 Order") granting Plaintiff Homeward Residential's

("Plaintiff") leave to amend. For the reasons that follow, Defendant's motion is denied.

## I. Background

### A. Factual Background

Knowledge of the basic facts of this case is presumed and is discussed at length in the Court's August 22, 2017 Opinion and Order (ECF No. 227). Briefly stated, the facts of this case are as follows: In 2006, Defendant, a mortgage originator then known as Option One Mortgage Corporation, sold a pool of over 7,500 mortgage loans with a total principal balance of approximately $1.5 billion as part of a deal related to the issuance of residential mortgage-backed securities ("RMBS"). (Second Amended Complaint ¶¶ 1, 16, ECF No. 126 (filed Oct. 6, 2016) [hereinafter SAC].) Defendant originated or purchased 5,625 mortgages and transferred them to Option One Mortgage Acceptance Corporation (the "Depositor") in October 2006. (Id. ¶¶ 1, 17.) This transfer was structured as a sale and is documented in a Mortgage Loan Purchase Agreement ("MLPA") dated October 19, 2006. (Id. ¶ 17.) The Depositor conveyed "all right, title, and interest" in the mortgage loans to a trust called the Option One Mortgage Loan Trust 2006-3 (the "Trust") by means of a Pooling and Service Agreement ("PSA") dated October 1, 2006. (Id. ¶ 18.) In December 2006, Defendant sold an additional 1,958 mortgage loans to the Trust. (Id. ¶ 20.) In

2

2008, Plaintiff took over servicing of the Trust loans and assumed the authority to enforce Defendant's obligations under the MLPA. (Id. ¶¶ 12-13, 27-28).

In the MLPA, Defendant made over fifty representations concerning the mortgage loans sold, including that "[t]here is no material default, breach, violation or event of acceleration existing under the Mortgage or the related Mortgage Note." (Id. ¶ 21.) Section 3.04 of the MLPA establishes Defendant's obligation to cure or repurchase loans within 120 days of discovery or notice of the breach of any representation, warranty, or covenant that materially and adversely affects the value of a loan or the interests of the Trust and its certificateholders in that loan. (Id. ¶ 24.)

In a letter dated March 8, 2012, Wells Fargo Bank N.A., as Trustee, gave Defendant notice of breaches of representations and warranties with respect to certain mortgage loans that materially and adversely affected the value of the loans or the Trust's interest in those loans and demanded that Defendant either cure those breaches or repurchase the loans within 120 days. (Id. ¶ 8.) Defendant responded on July 10, 2012, denying any merit to the claims. (Id.) On May 29, 2015, the Law Debenture Trust Company of New York, as Separate Trustee, gave Defendant notice of material breaches of representations and warranties with respect to an additional 649 loans and demanded

3

that Defendant either cure or repurchase those loans within 120 days. (Id. ¶ 9.)  The May 29 notice enclosed a letter from Perry, Johnson, Anderson, Miller & Moskowitz LLP, counsel for certain certificateholders, (the "Perry Johnson letter") and a set of schedules describing the nature of the breaches. (Id.) The Perry Johnson letter alleged "pervasive and widespread breaches" and reserved the right to give notice of additional breaches. (Id. ¶ 9.)  To date, Defendant has not cured or repurchased any loans. (Id. ¶¶ 8-9.)

Plaintiff alleges in the SAC that Defendant breached its representations and warranties with respect to "many loans" in the Trust and that Defendant was aware that there were widespread and systemic deviations from its underwriting guidelines when the loans in the Trust were approved. (Id. ¶¶ 29, 33.)  Because Defendant was allegedly aware of the widespread disregard of its underwriting guidelines and resulting pervasive breaches, Plaintiff seeks to require Defendant to honor its contractual obligation to repurchase all Trust loans with respect to which it has breached its representations and warranties, or otherwise compensate the Trust. (Id. ¶ 10.)  In the alternative, Plaintiff seeks to require Defendant to repurchase the 745 loans that were included in the March 2012 and May 2015 letters demanding repurchase. (Id.)

4

## B. September 30 Order Granting Leave to File Second Amended Complaint

Plaintiff first brought suit in this action on September 28, 2012, alleging breaches as to 96 of the 119 loans listed in the March 8, 2012 Trustee letter. (See Compl. ¶ 21, ECF No. 1 (filed Sept. 28, 2012).) After receiving notice of the Perry Johnson Letter, and after the deadline to file a second amended complaint had passed, on November 25, 2015, Plaintiff sought leave to amend its complaint to add (1) breach claims for the 649 additional loans identified by the Perry Johnson Letter, and (2) non-loan-specific allegations that Defendant's breaches were widespread and pervasive, that Defendant knew it was selling loans to the Trust that were in breach, and that Defendant should therefore repurchase all Trust loans that are proven at trial to materially breach those representations and warranties (the "constructive discovery claim"). (See Mem. of L. in Supp. of Mot. for Leave to File SAC, ECF No. 103 (filed Dec. 23, 2015).) On September 30, 2016, Judge Torres granted leave to file the SAC. (See Op. & Order, ECF No. 124 (filed Sept. 30, 2016).)

In the September 30 Order, Judge Torres held that Plaintiff met both Federal Rule of Civil Procedure 15 amendment standards and Federal Rule of Civil Procedure 16's good cause requirement. Judge Torres held that Plaintiff met Rule 16's good cause

requirement because Plaintiff "diligently sought to amend" once it became aware of the basis for its proposed new claims. (Id. at 6.) First, Plaintiff did not become aware of claims with respect to loans beyond the original 96 until May 2015, when it received notice from the Separate Trustee regarding the 649 additional loans. (Id.) Second, documents produced by Defendant during discovery provided evidence to Plaintiff for the first time of Defendant's widespread and systemic disregard of its representations and warranties and showed that Defendant knew of its breaches at the time it sold the loans to the Trust. (Id.) Although Defendant argued that Plaintiff did not act diligently in discovering its new claims because, as servicer, it had access to the 649 loan files for more than seven years, Judge Torres rejected this argument because Defendant provided no support for its contention that Rule 16 diligence imposes a duty to review and analyze "thousands of loans, each with loan files consisting of hundreds of pages" to determine whether Defendant had made additional breaches. (Id. at 7.)

Judge Torres next held that Plaintiff met Rule 15's "liberal" amendment standards. (Id.) First, Plaintiff did not unduly delay in seeking to amend, even though it had possession of the relevant loan files since 2008, because "Plaintiff would have had to review thousands upon thousands of documents in order to discover evidence of the claims it now seeks to add."

6

(Id. at 9.) Second, amendment would not be futile, despite the fact that the statute of limitations had run, because the proposed new claims related back to Plaintiff's original claims. (Id. at 9-12.) In finding that the new claims related back, Judge Torres relied on Nomura Home Equity Loan, Inc. v. Nomura Credit & Capital, Inc., 19 N.Y.S.3d 1 (N.Y. App. Div. 2015), which held that new claims regarding additional loans sold to a securitization trust related back to timely claims because the defendant was on notice, before the suit was filed, that certificateholders were investigating breaches in representations and warranties. (Id. at 10.) Judge Torres noted that here, as in Nomura, a pre-suit letter informed Defendant that additional loans were likely being investigated for breaches. (Id. at 11.) Further, Plaintiff, in both its original and amended complaints, included allegations suggesting Defendant's systemic disregard for its underwriting guidelines and its knowledge of breaches at the time of securitization. (Id.)

Judge Torres also rejected Defendant's argument that Plaintiff's claims must be limited to only those loans for which Defendant has been given notice of an alleged breach because "[c]ourts have held that a pleading sufficiently alleges that a defendant discovered its own breaches—triggering its remedial obligations—when the complaint alleges facts indicating the

seller's widespread and systemic disregard of its representations." (Id. at 12-13.) Finally, Judge Torres held that because the fact discovery deadline had recently been extended to March 2017, Defendant's assertions regarding prejudice were too speculative to override Rule 15's liberal standard. (Id. at 13.)

Plaintiff filed the SAC on October 6, 2016. On December 21, 2016, Defendant filed a motion for leave to appeal the September 30 Order granting leave to amend.[1]

## II. Discussion

### A. Legal Standard

District courts have discretion to certify for interlocutory appeal an order granting a motion to amend a complaint. See 28 U.S.C. § 1292(b). Certification is appropriate if the order "(1) involves a controlling question of law (2) over which there is substantial ground for difference of opinion [and] . . . (3) an immediate appeal would materially advance the ultimate termination of the litigation." Consub

---

[1] On October 14, 2016, Defendant moved for reconsideration of the September 30 Order, and on November 23, 2016, Defendant moved to dismiss in part the SAC. (See ECF Nos. 128, 139.) On August 22, 2017, the Court denied the motion for reconsideration and denied in part and granted in part the motion to dismiss. The Court found that Defendant did not provide the Court with sufficient grounds to justify the extraordinary remedy of reconsideration, and that Plaintiff had adequately pleaded its claims in the SAC, including its constructive discovery claim, with the exception of its claim for breach of the "no-fraud" representation in the MLPA, which the Court dismissed with prejudice. (See Op. & Order, ECF No. 227 (filed Aug. 22, 2017).)

8

Delaware LLC v. Schahin Engenharia Limitada, 476 F. Supp. 2d 305, 308–09 (S.D.N.Y. 2007), aff'd, 543 F.3d 104 (2d Cir. 2008), abrogated in part on other grounds by Shipping Corp. of India, Ltd. v. Jaldhi Overseas Pte Ltd., 585 F.3d 58 (2d Cir. 2009). "Leave to appeal . . . is warranted only in exceptional circumstances sufficient to overcome the general aversion to piecemeal litigation and to justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." Brims v. Dunn, No. 11 CV 712(VB), 2012 WL 234435, at *1 (S.D.N.Y. Jan. 26, 2012) (internal quotation marks omitted). "Certification is limited to extraordinary cases where appellate review might avoid protracted and expensive litigation [and] is not intended as a vehicle to provide early review of difficult rulings in hard cases." Id.

**B. Analysis**

Defendant argues that the Court should grant leave to appeal because the September 30 Order involves a controlling question of law:

> Does New York law prohibit the expansion of a breach-of-contract lawsuit seeking to enforce the repurchase remedy for allegedly defective mortgage loans when the plaintiff fails to provide within the six-year limitation period the contractually required pre-suit notice and demand to repurchase, regardless of whether the plaintiff also makes a bare allegation of pervasive breach?

(Def.'s Mem. at 5.)

9

Defendant contends that there is substantial ground for difference of opinion on this question because the September 30 Order's application of the relation-back doctrine conflicts with New York substantive law and federal law. (Id. at 7.)  First, Defendant argues that it has a right under N.Y. C.P.L.R. § 213(2), the statute of limitations for contract claims in New York, to be free of contractual liability six years after it gave the representations and warranties in the MLPA because C.P.L.R. § 213(2) is a statute of repose, which creates a substantive right. (Id. at 7-8.)  By applying the relation-back doctrine to allow Plaintiff to add new, untimely claims, the September 30 Order "altered the parties' substantive rights, thereby violating the Rules Enabling Act." (Id. at 7.)

Second, Defendant argues that Nomura directly conflicts with the New York Court of Appeals' opinion in ACE Securities Corp. v. DB Structured Prods., Inc., 25 N.Y.3d 581 (2015), because, according to Defendant, the Court of Appeals held that the full running of the cure-or-repurchase period is a condition precedent to bringing suit. (Id. at 11-12.)  Accordingly, Plaintiff's new claims should be barred because they relate to loans for which Defendant was not given the opportunity to cure or repurchase within the six-year limitations period. (Id. at 12.)  Further, Defendant argues that cases in the New York

Appellate Division, First Department, including U.S. Bank Nat'l Ass'n v. GreenPoint Mortgage Funding, Inc., 147 A.D.3d 79 (N.Y. App. Div. 1st Dep't 2016) and Bank of New York Mellon v. WMC Mortgage, LLC, 151 A.D.3d 72 (N.Y. App. Div. 1st Dep't 2017), reflect clear disagreement about the application of the relation-back rule in light of ACE. (See Notice of Supplemental Authority, ECF No. 156 (filed Jan. 13, 2017); September 18, 2017 Letter to Hon. John F. Keenan from Michael Calhoon, ECF No. 230 (filed Sept. 18, 2017).)

Third, Defendant argues that even if the Court were to find that ACE and Nomura do not directly conflict, directly conflicting holdings are not a necessary condition for certifying an order for appeal if the issue is "particularly difficult and of first impression for the Second Circuit." (Def.'s Mem at 12-13.) Defendant contends that the Court could certify the September 30 Order for interlocutory appeal based on the strength of the arguments in opposition to the challenged ruling. (Id. at 13.)

Alternatively, Defendant contends there is substantial ground for difference of opinion even if Nomura was correctly decided because the September 30 Order was incorrectly decided. (Id. at 16-18.) Defendant argues that the September 30 Order misinterpreted Nomura's relation-back holding because Plaintiff here made no general pre-suit demand for cure or repurchase of

11

all loans, and incorrectly allowed Plaintiff to newly allege a constructive discovery claim despite the requirement in the MLPA that demand for cure or repurchase be made on a loan-by-loan basis. (Id. at 18.)

Finally, Defendant argues that immediate appeal may advance the termination of this litigation because the September 30 Order allows "thousands of more claims than have been in this case since its 2012 commencement." (Id. at 19.) A ruling in Defendant's favor, it argues, would limit the number of loans at issue, thereby promoting judicial economy and the conservation of the parties' resources, and "promote finality in both active and future RMBS put-back cases in this circuit." (Id. at 20.)

### 1. No Substantial Ground for Difference of Opinion

Even if the Court were to find that the September 30 Order involves a controlling question of law, Defendant has failed to show that there is substantial ground for difference of opinion on the issue of whether relation back of untimely claims is barred because C.P.L.R. § 213(2) grants Defendant "a substantive right to be free of contractual liability . . . six years after" it signed the MLPA. (Id. at 7.) The "substantial ground for a difference of opinion" must arise out of a genuine doubt as to whether the district court applied the correct legal standard in its order. Consub Delaware LLC, 476 F. Supp. 2d at 309. A substantial ground for difference of opinion exists when "(1)

there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." Id. However, it is not sufficient that the relevant case law is "less than clear" or allegedly "not in accord," or that there is a "strong disagreement among the parties." Id. "A mere claim that a district court's decision was incorrect does not suffice to establish substantial ground for a difference of opinion." Id. at 309-10. Rather, the district court must "analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is substantial ground for dispute." Frederick v. Capital One (USA) N.A., No. 14-CV-5460 (AJN), 2015 WL 8484560, at *3 (S.D.N.Y. Dec. 8, 2015).

First, Defendant's argument that C.P.L.R. § 213(2) is a statute of repose that "creates a substantive right" and would bar any amended claims after six years is unavailing. A statute of repose is "[a] statute barring any suit that is brought after a specified time since the defendant acted (such as by designing or manufacturing a product), even if this period ends before the plaintiff has suffered a resulting injury." Statute of Repose, Black's Law Dictionary (10th ed. 2014). Accordingly, a statute of repose "acts to define temporally the right to initiate suit against a defendant after a legislatively determined time period." P. Stolz Family P'ship v. Daum, 355 F.3d 92, 102 (2d

13

Cir. 2004). A statute of limitations is "[a] law that bars claims after a specified period; specif., a statute establishing a time limit for suing in a civil case, based on the date when the claim accrued (as when the injury occurred or was discovered)." Statute of Limitations, Black's Law Dictionary (10th ed. 2014). Thus, "[s]tatutes of limitations limit the availability of remedies and . . . may be subject to equitable considerations, such as tolling . . . [while] statutes of repose affect the underlying right, not just the remedy, and thus they run without interruption once the necessary triggering event has occurred." Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc., 721 F.3d 95, 106 (2d Cir. 2013).

Under C.P.L.R. § 213(2), "[a] cause of action for breach of contract ordinarily accrues and the limitations period begins to run upon breach." Guilbert v. Gardner, 480 F.3d 140, 149 (2d Cir. 2007). Although, as Defendant points out, New York courts do not apply the "discovery rule" in breach of contract actions, the limitations period for contract claims is subject to equitable tolling and relation back. See Marvel Worldwide, Inc. v. Kirby, 756 F. Supp. 2d 461, 472 (S.D.N.Y. 2010) (noting that fraudulent concealment can toll the statute of limitations for contract claims); Sea Trade Co. v. FleetBoston Fin. Corp., No. 03 CIV. 10254 (JFK), 2006 WL 2786081, at *2 (S.D.N.Y. Sept. 26, 2006) (counterclaim for breach of contract "save[d]" by New

14

York's tolling rules); Wingspan Records, Inc. v. Simone, No. 12 CIV. 2172 NRB, 2014 WL 2116191, at *4 (S.D.N.Y. May 16, 2014) (amended complaint for breach of contract claims would not be time-barred under C.P.L.R § 213(2) if plaintiff could show that new claims related back to timely filed complaint).  Thus, C.P.L.R. § 213(2) is a statute of limitations, not a statute of repose.  Further, none of the cases Defendant cites support its argument that C.P.L.R. § 213(2) is a statute of repose that would bar suit and extinguish the underlying right after a specified time, even in cases where a plaintiff has not yet suffered a resulting injury.  Indeed, in ACE, the court noted that the statute of limitations for contract actions "begins to run from the time when liability for wrong has arisen." 25 N.Y.3d at 594; see also Bank of New York Mellon, 151 A.D.3d at 78 (noting in a breach of contract action that it is "well-settled that the expiration of a time period set forth in a statute of limitations does not extinguish the underlying right, but merely bars the remedy").

Second, there is not, as Defendant argues, a substantial difference of opinion on the relation-back doctrine as applied to RMBS put-back actions in New York courts.  Defendant has not established that there is "conflicting authority on the issue" or that this issue is "particularly difficult and of first impression," nor provided strong arguments in opposition to the

15

holding of the September 30 Order. Contrary to Defendant's assertions, the holding in ACE does not conflict with Nomura. The New York Court of Appeals in ACE upheld the dismissal of the suit as untimely where the plaintiff failed to provide notice of breach and opportunity to repurchase or cure for any loans before the expiration of the six-year statute of limitations. See ACE Sec. Corp., 25 N.Y.3d at 592, 599. The plaintiff argued that the suit was timely because the claims did not accrue until the defendant refused to cure or repurchase defective loans. Id. at 594. The court rejected this argument and held that "[Defendant's] failure to cure or repurchase was not a substantive condition precedent that deferred accrual of the Trust's claim; instead, it was a procedural prerequisite to suit." Id. at 599. Thus, the holding in ACE does not "eliminate the use of relation back," (Def.'s Mem. at 11), where, as here and in Nomura, timely claims were filed within the six-year statute of limitations after Defendant was given the required opportunity to repurchase or cure.

Similarly, the First Department in GreenPoint and Bank of New York Mellon upheld dismissals of plaintiffs' claims where the plaintiffs did not provide any timely pre-suit breach notices. See Bank of New York Mellon, 151 A.D.3d at 79 (plaintiff could not assert timely claims against originator where it did not provide notice and opportunity to cure within

16

six-year statutory period for any loans); GreenPoint, 147 A.D.3d at 86 (plaintiff's claims predicated on actual notice of breach did not relate back to timely constructive discovery claims where no pre-commencement breach notices were sent to defendant). In fact, the Court in GreenPoint specifically distinguished its decision from the holding in Nomura on these grounds:

> With respect to the relation back issue, the most important factual distinction between this case and Nomura is that [in Nomura] the trustees actually sent presuit breach notices . . . [which] expressly stated that the trustees were still investigating the matter and that further nonconforming mortgages might be discovered. . . . Here, no such precommencement breach notice was ever sent to [Defendant], so its obligation to cure (repurchase) or otherwise respond was not triggered; the breach notices were only sent after the action was commenced.

GreenPoint, 147 A.D.3d at 88. Thus, there is no substantial disagreement among New York courts about the application of the relation-back doctrine to breach of contract claims brought after the six-year statute of limitations.

Defendant argues in the alternative that a substantial ground for difference of opinion exists because (1) even if Nomura was correctly decided, the September 30 Order "stretched the relation-back principle beyond what ACE permits" because Plaintiff made no general pre-suit demand for cure or repurchase of all loans, and (2) Plaintiff cannot allege a constructive

17

discovery claim because the MLPA requires loan-by-loan notice and demand for cure or repurchase. (Def.'s Mem. at 16-18.) The Court already considered and rejected these arguments in its Opinion and Order denying reconsideration of the September 30 Order and denying in part Defendant's motion to dismiss. (See Op. & Order at 19-22, ECF No. 227 (filed Aug. 22, 2017).) Further, "[a] mere claim that a district court's decision was incorrect does not suffice to establish substantial ground for a difference of opinion" that would warrant certification for appeal. Consub Delaware, 476 F. Supp. 2d at 309-10. Thus, Defendant has not shown that there is substantial ground for difference of opinion on whether relation back of untimely claims is barred by C.P.L.R. § 213(2), nor has Defendant provided strong arguments in opposition to the September 30 Order.

### 2. Defendant has not Shown that Interlocutory Appeal Would Ultimately Advance the Termination of This Litigation

Finally, Defendant argues that immediate appeal "may materially advance the termination of the litigation because the [September 30] Order allows thousands more claims than have been in this case" since 2012 and a ruling in Sand Canyon's favor would promote finality in RMBS put-back actions. (Def.'s Mem. at 19-20.) Defendant has not demonstrated that immediate appeal would materially advance the termination of this litigation.

18

Judge Torres granted leave to amend on September 30, 2016 and discovery in this action is well underway. Certification of appeal to the Second Circuit, or potentially to the New York Court of Appeals, could considerably delay this case, which has been pending since 2012. Further, in light of the lack of substantial difference of opinion on the proposed issue for appeal, it is not clear that an immediate appeal would have any significant impact on other RMBS put-back actions. Accordingly, Defendant has failed to show that certification for interlocutory appeal is warranted.

## CONCLUSION

For the reasons stated above, Defendant's motion to certify the September 30 Order for interlocutory appeal is DENIED. The Clerk of Court is respectfully directed to terminate the motion docketed at ECF No. 151.

**SO ORDERED.**

Dated:    New York, New York
             January 24, 2018

                                                 *John F. Keenan*
                                             John F. Keenan
                                     United States District Judge